ALBANY,
January, 1838.

JAMES JACKSON, *ex dem.* John Suffern and John S. Suffern, *vs.* JOHN MCCONNELL.

Jackson
v.
McConnell.

By a deed to husband and wife, the grantees hold the fee, not in moieties but in severalty, (per tout et non per my,) with the right of survivorship; neither the husband or wife can in their own right alien any part without the concurrence of the other, nor can the husband's creditors take his interest in execution. It seems, however, that the husband may alone execute a mortgage of his interest, and may also give a lease in his own name for the purpose of bringing ejectment.

Acquiescence in an adverse possession according to an erroneous line is no bar, unless continued so long that the statute of limitations attaches.

A grantee of lands may claim all embraced within the deed, as designated by monuments, courses and distances, although the premises are described as containing 200 acres strict measure and no more.

THIS was an action of ejectment, tried at the Tioga circuit in October, 1836, before the Hon. ROBERT MONELL, one of the circuit judges.

John Suffern, one of the lessors of the plaintiff, being the owner of a tract of land containing 400 acres, on the 22d January, 1816, conveyed the same to John S. Suffern (the other lessor of the plaintiff) and Elizabeth, the wife of the said John S. Suffern, excepting and reserving 200 acres off of the north side of the lot agreed by articles of agreement, bearing date 21st June, 1814, to be conveyed by the grantor to John McConnell. On the 11th April, 1816, John Suffern, in pursuance of the agreement made with John McConnell, executed a deed to the latter, conveying to him a tract of land, describing it as *beginning* at a well known point, giving courses and distances, and concluding as follows; *containing* 200 *acres, strict measure, and no more.* It was insisted on the trial, in behalf of the plaintiff, that the defendant had taken possession of *about nine acres* more than the 200 acres conveyed to him. On the part of the defendant, it was contended that the southern boundary of the northern 200 acres was designated by a line surveyed by one Lawrence, and known as the *Lawrence line;* whereas the plaintiff insisted that the true line was a line known as *Ludley's line;* and which one of these lines was

the true line, was the principal question in contest on the trial, The plaintiff, however, further insisted that at all events, the defendant was in possession of more than 200 acres, and that his possession of the *excess* was wrongful, inasmuch as by his deed he was *limited to two hundred acres.* There was evidence of acquiescence on the part of the lessor, John S. Suffern, in the maintenance of a fence by the defendant on the Lawrence line ; but there was no proof of any express agreement that the line upon which the fence was built should be the division line between the parties. When the evidence was closed, the counsel for the defendant amongst other positions assumed by him insisted, and so requested the judge to charge the jury, that the title of the lessor, John Suffern, having been divested by his conveyance to John S. Suffern and Elizabeth his wife, there could be no recovery on his demise ; and that there could be no recovery on the demise of John S. Suffern, on account of the *non-joinder* of the wife as a lessor. The jury, under the charge of the judge, found a verdict for the plaintiff, which the defendant now moves to set aside.

*J. A. Collier,* for the defendant.

*J. A. Spencer,* for the plaintiff.

*By the Court,* COWEN, J.   I do not collect from the case that the question of *excess* in Lawrence's survey, of three or four acres over the two hundred intended to be conveyed to the defendant, was either submitted to the jury or passed upon by them.   Certainly it could not be made available as in itself the ground of recovery: The words of exact restriction to *two hundred acres and no more* in the deed to the defendant could never be allowed to supersede or control a palpable description, so easily traceable as was the Lawrence survey, through its monuments, courses and distances.

The acquiescence of John S. Suffern for a length of time in the lines as run by Lawrence, was put to the jury *as ev-*

ALBANY,
January, 1838.

Jackson
v.
McConnell.

*idence* of an agreement to abide by the survey made by Lawrence, especially of the south line, and such acquiescence for a great number of years *as conclusive evidence* of an agreement. This was as favorable for the defendant as would be warranted by the law, since the decision in the court for the correction of errors in *Adams* v. *Rockwell*, 16 Wendell, 285. Mere silent acquiescence in an adverse possession, according to an erroneous line, is no bar till it shall have continued for the time demanded by the statute of limitations, unless the jury infer an agreement. The utmost here insisted on is acquiescence for *sixteen years*, and *no express agreement* to the fence as the true line, was shown.

The remaining question respects the demises laid in the declaration. John Suffern having by his deed transferred all his title to John S. Suffern and wife, the demise from the former became unavailable ; and it was objected upon the trial, that the title residing in the two latter, the declaration should have stated a *joint lease* from them to the plaintiff. No doubt the plaintiff was bound to show such a title as enabled him to make a *separate* demise, as he has laid it in his declaration. *Doe, ex dem. Marston* v. *Butler*, 3 Wendell, 149. In examining the power of the lessor to demise, the first question is, whether he have a right of entry, Adams' Eject. Tillinghast's ed. 10 ; and it was not denied, in this instance, that such a right passed by the deed to John S. and wife. Could the former alone make a lease ? All the books agree in the nature of the estate and seizin created by such a deed. Each of the grantees holds the land in fee— not in moieties, but in severalty, (*per tout et non per my*, as it is technically expressed,) with the right of survivorship ; and so familiar was this feature, that I have met with but two of our states, among many whose courts have had it under consideration, which have refused to recognize it in the construction of their conveyances. These are Connecticut and Ohio, both of whose superior courts, however, admit that it is the well settled rule of the common law. *Whittlesey* v. *Fuller*, 11 Conn. R. 337. *Sergeant* v. *Steinberger*, 3 Hamm. R. 305. Various legal consequences ari-

sing from such a peculiar estate have also been deduced by the cases. Neither the husband nor wife can, in their own right, alien any part without the concurrence of the other. *Jackson, ex dem. Stevens* v. *Stevens,* 16 Johns. R. 115, per Spencer, J.; *Doe, ex dem. De Peyster* v. *Howland,* 8 Cowen, 283, per Savage, C. J.; and see 16 Johns. R. 305. The husband's creditors cannot take his interest in execution, *Rogers* v. *Grider,* 1 Dana, 242, *Roanes* v. *Archer,* 4 Leigh, 550, though it is certainly inferrible, from *Barber* v. *Harris,* 15 Wendell, 615, that his right *jure uxoris* might be thus appropriated. *Litchfield* v. *Cudworth,* 15 Pick. 23. *Stoebler* v. *Knerr,* 5 Watts, 181. *Brown* v. *Gale,* 5 N. Hamp. R. 416. *Schermerhorn* v. *Miller,* 2 Cowen, 439. That case holds, that the husband alone may give a mortgage of such interest. Why then can he not enter or give a lease? It was suggested on the argument that here was something in the nature of a joint tenancy, in which case it is not settled, that one can demise without the other. If such were the consequence, none of the cases give countenance to the analogy, unless it be those in Connecticut and Ohio; and these admit it to be peculiar with them. All the other cases deny that the seizin is in joint tenancy either in substance or form. That was the very question in several of the cases already cited; and to these may be added various others. *Thornton* v. *Thornton,* 3 Rand. 179. *Taul* v. *Campbell,* 7 Yerg. 319, 333. *Den. ex dem. Hardenbergh* v. *Hardenbergh,* 5 Halst. 42, 45. *Shaw* v. *Hearsey,* 5 Mass. R. 521. *Ross* v. *Garrison,* 1 Dana, 35, 37, 8. The survivorship presents the greatest formal resemblance; and yet, instead of putting that on the notion of a joint tenancy, the authorities all refer it to the established effect of a conveyance to husband and wife, pretty much independent of any principles which govern other cases.

But if otherwise, I am not prepared to admit that one joint tenant is unable to demise his share, and so recover it in *ejectment,* without the concurrence of his co-tenant. A separate lease by him is considered a severance, at least *pro tanto.* *Doe, ex dem. Marsack* v. *Reed,* 12 East, 57, 61. *Doe ex dem. Lulham* v. *Fenn,* 3 Campb. 190. Nor does this conflict with the rule that joint tenants must

bring a joint action, whether it be real or mixed, according to Co. Litt. 195, § 311, and the commentary. Those are cases where the action stands *nominally* in favor of the joint tenants, as plaintiffs on the record. The cases put are of a *præcipe quod reddat* or *assize ;* and so the ejectment seems to have been in *Milne* v. *Cummings,* 4 Yeates, 577, in which Coke is followed. Such is also the case supposed by Sutherland J., in *The People* v. *Webster,* 10 Wendell, 554. Such also are the cases of *Schoonmaker's ex'rs.* v. *Elmendorf,* 10 Johns. R. 49, and *Gibson* v. *Todd,* 1 Rawle, 452, 455. We certainly collect from these and various other cases the *general rule* that joint tenants must join and be joined in all actions. Ejectment, however, is an *exception.* To many purposes the lessors of the plaintiffs are the real parties ; but the fiction of a lease, when you come to examine the power of demise, seems always to have been treated as a reality. The cases cited from 12 East and 3 Campb. go upon that. The lease working a severance, the lessee thus becomes a tenant in common with the other tenant, at least for so much of the estate as the declaration supposes to be demised. Being a tenant in common, he must in general sue alone. Co. Litt. 195. Nothing is joint between him and his co-tenant excepting possession ; and though we hold that tenants in common may make a *joint or several* demise in ejectment, *Jackson, ex dem. Vandenberg* v. *Bradt,* 2 Caines, 169, yet a great majority of the cases are the other way. *Heatherly, ex dem. Worthington,* v. *Western,* 2 Wils. 232, and the cases there cited. *White* v. *Lessee of Pickering,* 12 Serg. & Rawle, 435, and cases there cited. *Innis* v. *Crawford,* 4 Bibb, 241. Nor do I think the rule as to joinder would be at all different, if this case were to be considered as commenced and pending under our revised statutes, for you may insert the names of the real claimants in different counts in substance as formerly ; " and all the provisions of law concerning lessors of a plaintiff shall apply." 2 R. S. 231, § 5, 2d ed. The revised statutes, however, do not reach the case.

It is said that the wife should be a party in order to bind her : and that her husband being the sole party, she is not

at all affected, and would not be even by a common recovery. 5 Halst. 45, 6, and authorities there cited. We have already seen how widely this general rule has been departed from in cases of ejectment. It is a mere possessory action; and a recovery never bound the right under the old form of proceeding. It worked little if any effect beyond changing the *onus probandi* in a cross action. Adams' Eject. Tillinghast's ed. 315. The doctrine that you shall not divide one right into several, and in that way make several suits, did not apply.

I have said that in the case at bar the husband alone could not *alien*. The meaning is he cannot alien the *entire estate*. His case was put with that qualification in *Rogers* v. *Griden ;* but *Barber* v. *Harris*, we have seen, holds that he may mortgage all the interest which he has in right of his wife ; being seized *jure uxoris*, it follows that he may make a lease in his own name alone, or may join with his wife, at his option. So in effect, it was held by *Wilson* v. *Rich*, 1 Brownl. 134, 5. That was in the 44 Eliz. before the fictitious lease had been allowed. The husband and wife made a lease, but actual possession under it being necessary according to the practice of that day, instead of delivering it in person, the wife made a power of attorney for that purpose. The husband then sued, laying the demise *jointly*, from himself and wife. Popham, Fenner and Yelverton, justices, held that, as the wife could not make an attorney, there was no delivery of possession as to her, and therefore the proof varied from the declaration. They added, the lease is *only the lease of the husband ;* but they did not at all question that had the declaration contained a count on his *sole* demise, he might have recovered.

On the whole, I do not think there is any foundation for a new trial to be found in any of the points taken. One of them objects that the verdict is against the weight of evidence, and it is said the preponderance is decidedly in favor of the accuracy of the Lawrence survey ; and another, that Murray McConnell and Amy Carpenter, witnesses for the defendant, are to receive credit in preference to Hartline, a witness for the plaintiff, who, if he contradicts them, was

effectually impeached. There was a very striking conflict of testimony between the surveyors and others in respect to the Ludley and Lawrence lines; and some of the testimony in favor of the plaintiff was derivable from the admissions and acts of the defendant himself. In my opinion, the jury might well regard the testimony of Hartline as contradicting Murray McConnell and Amy Carpenter, especially the former; and it was entirely their office to say what degree of credit they would accord to each. Aside from the documental evidence, all the questions in the case were eminently proper to be submitted to the jury; they were so submitted; and the finding of the jury is precisely such as we cannot disturb without a plain encroachment upon their province.