Dickinson and Wife *v.* Codwise and others.

DICKINSON and Wife *v.* CODWISE and others.

A wife owned land on the East River, in the city of New-York, which the corporation of the city directed to be extended out into the river, in pursuance of the city charter and the laws of the state. Her husband caused the designated portion to be filled up, and the land was extended accordingly. The land thus regained from the river belongs to the wife.

A conveyance of land to husband and wife jointly, vests them both with the entirety, and on the death of one the whole title survives to the other.

Where a wife is seised of building lots which are separated from a street by a narrow gore of land, and the husband purchases such gore and takes a conveyance of it in his own name, he will de deemed in equity a trustee thereof for her benefit.

Authorities cited in relation to purchases by parties placed in situations of confidence towards others, or towards the property purchased.

A testator, ten or eleven years before his death, contracted verbally for land, entered into possession, and occupied it till his death. His executrix succeeded to the possession, and several years afterwards paid the purchase money and took a deed for the land in her own name. She was held to be a trustee for the heirs of the testator.

Where the husband borrows money and secures it by a mortgage which his wife executes with him, on her lands, and he lays out the money in permanent buildings and improvements on such lands, she is not a surety for him in respect of the mortgage debt.

One interested with the complainants in the fund in question was examined as a witness in their behalf, after he was decreed a bankrupt, and before he was discharged. *It seems* that he was not a competent witness.

Oct. 9, 10, 1843 ; January 24, 1844.

Charles Dickinson, Jr. and Anna Maria his wife, filed their bill on the 20th day of April, 1842, against Mary Codwise and others for the partition of ten stores and lots lying on Front-street, Burling Slip, and South-street, in the city of New-York ; whereof, as the bill alleged, George Codwise, Jr., died seised in fee simple. Mary Codwise was his widow ; and as the bill charged, had no estate in the premises, except her dower right, at the death of her husband.

Mrs. Codwise by her answer, claimed that she was legally seised in fee in her own right of a great portion of the lands, and in equity absolutely entitled to the residue.

Various persons were made defendants as the heirs of George Codwise, Jr., and as representing such of those heirs as were deceased.

The material facts established by the pleadings and proofs were the following :

The title was derived from five distinct sources.

1. The principal tract, being the nucleus of the whole, is a parcel of land extending from Front to South-streets, and separated from Burling Slip by the gore next mentioned. This tract is 37 feet and 9 inches wide in front and rear and throughout, and is 247 feet in length from Front to South-streets. It was designated by being colored yellow on the map made by J. F. Bridges, a surveyor, which was a part of the evidence.

Mrs. Codwise was the daughter of John Byvanck, and with her sister, inherited from him the land opposite to this parcel on the northerly side of Front-street, and extending from thence northerly to Water-street, and such land as was then made south of Front-street. In a partition deed between her and her sister, Mrs. Youle, dated July 15, 1799, Mrs. Youle released to her in fee, so much of this parcel as was then in existence, describing it as being bounded north-westerly in front by Front-street, north-easterly by ground of George Bowne, in the rear by the river, and south-westerly by ground of John Riker, containing in breadth 37 feet and 9 inches, and in depth from Front-street into the river, the extent of the grant from the corporation of the city of New-York, with the right to all future grant from the corporation.

When South-street was extended by the city authorities to a point above this property, a dock was erected, and the land covered with the water of the river, in front of the land described in this partition deed, was filled with earth by Mr. Codwise, pursuant to the laws and ordinances referred to in the opinion of the court ; and the whole parcel in question was thus produced, extending from Front-street to South-street.

On the 11th of July, 1803, the Mayor, Aldermen, and Commonalty of the City of New-York, executed a deed to George Codwise, Jr., and Mary his wife, which recited her right to a grant of the soil under water in the East River at the place

where this tract was gained from the river, and that her husband had prayed in her right for such grant; and it thereupon conveyed and confirmed to them in fee, the water lot or piece of land under water, in front of and opposite to her land. This grant described the premises conveyed, as bounded northerly in front by Front-street, southerly by the new street, called South-street, easterly by a water lot granted, or to be granted, to George Bowne, *and westerly by Burling Slip,* containing in breadth 37 feet, and in length on Burling Slip, 247 feet. It reserved a small annual rent to the corporation, and Mr. Codwise covenanted to build a wharf or street at least 25 feet in breadth along the westerly side of the premises the whole length of 247 feet, and to build South-street 70 feet in width in front of the premises granted, and of the wharf of 25 feet.

2. The second tract is a gore along the easterly side of Burling Slip, extending from Front-street to South-srreet, which is five feet eight inches wide on Front-street, and eight inches wide on South-street. It was colored red on the map exhibited.

This parcel was included by the monuments described in the deed from the corporation of the city last stated. In truth it was a part of the land reclaimed from the river by George Codwise, Jr., in pursuance of that grant, and he supposed that it became vested in himself and his wife thereby. In 1805, he built upon it as is presently detailed.

On the 21st of February, 1812, the corporation of the city executed another deed in fee of this gore, to Mr. Codwise only, expressed to be in consideration of $718 85.

3. The third tract is a lot on South-street, adjoining the first parcel, and lying easterly of it, which is 24 feet wide in front, 24 feet in the rear, and extending back in depth from South-street 161 feet, 3 inches.

This parcel was colored blue on the map exhibited. It was conveyed to George Codwise, Jr., in fee simple, by George Bowne, on the 25th of May, 1804.

4. The fourth parcel is situated in the interior of the block, directly in the rear of the third parcel, and also of the parcel next described. It was about 45 feet east and west, by about ten feet in width, and was colored green on the map exhibited.

George Codwise Jr. took possession of this parcel when he erected the buildings on Burling Slip, under a parol agreement for its purchase from Robert H. Bowne. One of those buildings covers nearly half of the parcel. In January, 1823, R. H. Bowne presented an account to Mrs. Codwise as executrix of her husband, for the price of this land, $1000, and the interest on it from May 1, 1806; the whole amounting to $2166 66. She referred it to David Codwise Esq., her late husband's brother, who occasionally advised and assisted her in relation to the affairs of the estate, who examined into the subject, and was satisfied that the sum claimed was due. Mrs. Codwise thereupon paid it to Bowne, or satisfied him for the same, (it was not proved how much she paid,) and he conveyed the land to her individually in fee, by a deed which expressed a consideration of $1200.

5. The fifth and last parcel is situated on Front-street, easterly of and adjoining the first parcel. It was colored orange on the map exhibited. It is a gore of land, 11 feet wide on Front-street, ten feet three inches wide in the rear, and extending back 85 feet from Front-street. This parcel was conveyed to George Codwise Jr. in fee, by William Cooper, on the 29th of March, 1804.

By adding these purchases to the original tract belonging to Mrs. Codwise, and filled in from the river, George Codwise Jr., became possessed of the whole premises in question, fronting 62 feet 5 inches on South-street, 245 feet on Burling Slip, and 54 feet 5 inches on Front-street. In or about the year 1805, he proceeded to improve the same, and erected thereon ten valuable brick stores, which covered the whole front on the three streets. Two stores fronted on Front-street, one of which extended about 75 feet in depth on Burling Slip; three stores fronted on South-street, one of which extended about 70 feet on the Slip; and the remaining five fronted on Burling Slip.

The buildings were erected without any regard to the lines of the five parcels of land which constituted the ground plat. The corner store on Front-street covered a part of the first and second parcels, and the upper store on Front-street covered a part of the first parcel and all of the fifth, except about ten feet

of its rear. The store on Burling Slip, nearest to Front-street, (known as No. 29,) extended across the first and second parcels, and covered also the remainder of the fifth, and a part of the third and fourth parcels. The area in the rear of this store included the residue of the fourth parcel, and extended to the east bound of the third.

Each of the other four stores on Burling Slip, (Nos. 31, 33, 35, and 37,) extended across the second and first parcels, and upon about 17 feet of the third; and with the area attached, extended clear across the third parcel.

The store on South-street, at the corner of Burling Slip, covered the southerly part of the second parcel, and a part of the first parcel. The adjoining store on South-street covered a part of the first and third parcels. And the remaining store on South-street was built wholly upon the third parcel.

The stores remained as they were first built, when this suit was commenced.

The expense of regaining the land covered with water, and erecting buildings on the premises, was very great, and in order to defray it, Mr. Codwise made large loans from time to time, and applied portions of his own property. His debts were consolidated in 1810, and subsequently.

On the 7th of May, 1810, Codwise and wife executed a mortgage for $25,000, to Arden, and on the 1st of November, 1810, they executed to him another mortgage for $10,000. These mortgages conveyed the whole premises in question, and they bound the property on the west by Burling Slip. On the 15th of November, 1811, they executed two mortgages to Cromwell, one for $5000, on lots in Bridge-street and Corlear's Hook, the property of Mrs. Codwise by inheritance from her father; and the other for $5500, on 58 acres of land belonging to Mr. Codwise, situated at Jamaica. On the 10th of February, 1812, a third mortgage on the lands in question, was executed by Codwise and his wife to J. Jones, to secure $10,000. When the purchase was made of Cooper, a mortgage was given for the purchase money. And when the purchase from George Bowne was made, a mortgage was also given for the price, which was paid out of the loan from Arden. In 1815, two

other mortgages were given, amounting to $9000, on other property.

Of these mortgages, it appeared that more than $60,000 were outstanding at the death of George Codwise Jr. He died on the 16th of August, 1816, having made a will by which he appointed his wife his executrix, directed the payment of his debts, and authorized her to sell his real estate.

His will provided that his property should be divided according to law. His children were Jane B., who died intestate and without issue, in 1831; James N., who died in 1835, having devised all his property to his mother; John B., who was a party defendant in this suit; David A., who died in 1824; Alexander H., who died in 1826; Theodore O., who died in 1828, and Georgiana L., who died in 1840, all intestate and without issue; Charles F., who with his wife was a defendant; Anna Maria, who with her husband was a complainant; and Cornelia J., who was a defendant, with her husband John C. Van Rensselaer.

Charles F. Codwise, in 1827, conveyed his interest in the property to his mother. He was declared a bankrupt pending the suit, and Van Rensselaer had also been declared a bankrupt. The general assignee in bankruptcy was a party defendant.

After the death of Mr. Codwise, Mrs. Codwise took possession of the estate real and personal, and ever since retained all of the same, save such as she had sold or disposed of. She made no inventory, and kept no account of either the personal or real estate. Her children lived with, and were brought up by her. She kept down the interest on the mortgages, and reduced the principal. In 1824, she obtained a loan of $50,000 from the Eagle Fire Insurance Company upon mortgage of this property, with which all the outstanding incumbrances were discharged. In order to perfect the security, the adult children joined her in the mortgage, together with a special guardian representing the infants and acting under an order of this court. In her petition for this order, Mrs. Codwise stated that her late husband was seized in fee of a part of the lands, and was tenant by the curtesy of the residue. A similar recital is contained in one of the mortgages then given.

Previous to this, she had sold some of her own property, and had paid off some of the mortgages subsisting thereon.

The mortgages to the Eagle Fire Company were gradually reduced by Mrs. C., and in 1837 were finally discharged.

In 1837, Mrs. Codwise gave a mortgage to David Wood on the seven stores then unsold, for $20,000; in which she induced her children to join. She used $10,000 of the money in the purchase of a house for her own use, the residue was applied to extinguish the old mortgage debt.

In 1830, Mrs. Codwise in her own right, and as executrix of her husband, sold and conveyed in fee the two stores and lots on Front-street, and the adjoining store and lot, known as No. 29 Burling Slip. The consideration was $30,000. The complainants insisted that this sale was unauthorized and void.

The premises in question had produced a large income, ever since the death of George Codwise Jr.

Mrs. Codwise claimed that she was entitled as a surety to enforce the mortgages which she had paid, against the lands, if any there were, which descended to her children; and that she was not liable to account for any rents received by her more than six years before the commencement of this suit. Mrs. Van Rensselaer, claimed her share, freed from any right of the general assignee, on the ground of her equity for a settlement.

There was a great mass of documentary evidence, and considerable testimony taken before the Examiner. Only so much of both has been stated, as was requisite to render the decision intelligible.

*S. F. Clarkson* and *M. S. Bidwell,* for the complainants.

*E. H. Owen* and *D. Lord Jr.,* for Mrs. Mary Codwise, J. B. Codwise and wife, and J. C. Van Rensselaer and wife.

THE ASSISTANT VICE-CHANCELLOR.—The lands in question were conveyed in five distinct parcels, and much of the apparent difficulty in determining the title, arises from the circumstance that George Codwise Junior laid out the whole into lots, as if he were the exclusive owner in fee, and built

Dickinson and Wife *v.* Codwise and others.

upon those lots, with reference solely to the adjoining streets, and regardless of the lines of the respective grants. So that it may happen by the decision, that a few feet of the front and rear of several of the stores belong to the heirs of George Codwise, while the middle and larger portion is owned by his widow. This apparent difficulty may prove to be a very substantial one in reference to the division of the estate, and the accounting for its income. Leaving this for future consideration, I will proceed to examine the title to the five parcels composing the entire premises in question.

I. The parcel colored yellow on the map made by Bridges.

George Codwise Jr. was a party to the deed of partition between his wife and Mrs. Youle, and this, with the subsequent grant from the corporation, furnish sufficient evidence against his heirs, that Mrs. Codwise owned in fee the parcel of ground in question, extending southerly from Front-street into the East River. South-street was not then made as far east as these premises, and the made ground on this tract extended only a short distance southerly from Front-street.

From this ownership of Mrs. Codwise of the land fronting on the river, we may deduce her title to the whole parcel extending through to South-street.

By the City Charter, § 38, the land under the water of the East River, to the distance of 400 feet from a line drawn from Corlear's Hook to Whitehall, was granted to the corporation of the city in fee simple, with power to fill up and use the same. (Kent's City Charter, 87.) The legislature regulated this right in part, by the "Act for regulating the buildings, streets, wharves, and slips in the city of New-York," passed April 3, 1801. (2 Laws of New-York as revised by Kent and Radcliff, 126.) The third section of that act authorized the corporation to lay out regular streets or wharves of the width of seventy feet in front of those parts of the city which adjoined to the East and North Rivers, and to extend the same with the progress of buildings along those rivers. The fourth section provided that such streets or wharves should be made at the expense of the proprietors of land adjoining or nearest and opposite thereto, in proportion to the breadth of their several lots, and that the

proprietors whose lots might not be adjoining to such streets or wharves, should fill up and level at their own expense, the spaces lying between their lots and such streets or wharves, and should, upon so filling up and levelling the same, be respectively entitled unto and become the owners of the intermediate space of ground in fee simple. The same provisions were re-enacted in the revision of 1813. (2 Rev. Laws, 432.)

Therefore, when the corporation of the city laid out and extended South-street easterly from Burling Slip, it became the duty of Mrs. Codwise, as the owner of the parcel in question to the then shore of the East River, to build South-street in front of that parcel to the width of seventy feet, and to fill up and level the intervening space between her land and South-street; and upon her so doing, the intervening space became her ground in fee simple. All this was done by her husband, who had a life interest in the parcel as it previously existed, and he thereby acquired a life estate in the new made ground. I need not refer here to the means by which the expense was defrayed, for if it were borne by the husband himself, the addition would be as much an accession to the wife's property, as if he had erected a store upon her land.

In this view of the case it is clearly established, that the first parcel in question belonged to Mrs. Codwise.

Her title is also shown by the deed of the corporation of the city to her husband and herself jointly, dated July 11, 1803.

If the title depended upon the effect of this conveyance, the estate vested in Mrs. Codwise, on her husband's death in 1816. They constituted one person in law, and by the grant, they both became seised of the entirety, and the whole went to the survivor. 2 Kent's Comm. 132, 2d ed. ; *Jackson ex. dem. Stevens* v. *Stevens*, (16 Johns. 110.) ; *Jackson ex. dem. Suffern* v. *M'Connell*, (19 Wend. 175.)

It remains to inquire whether Mrs. Codwise has done any act which prevents her from setting up her title as against the complainants in this suit.

The acts which were referred to as having this effect, were her execution of mortgages on this property with her husband, as of his estate; her payments on mortgages after his death as

his executrix; her accepting the devise of her son James, and a deed from her son Charles ; her conversations about dividing the property among the children ;· and her inducing them to join in giving a bond and mortgage on part of the premises.

1. As to the mortgages executed by Mrs. C. with her husband, I discover nothing in them that is inconsistent with her ownership of the estate. · If there were, no inference could be drawn from the fact for two reasons : the mortgages embraced some land which she never owned, and not being executed to these parties, they cannot be used by them as an estoppel. 2. Many good reasons may be assigned for the receipts expressing the payments to have been made by her as executrix, without casting even a suspicion upon her claim to this parcel of ground. 3. The will of James N. Codwise, is a general devise of his estate without specification. 4. The deed from Charles F. Codwise to his mother, merely conveys his right and title to the whole tract in controversy. 5. The parol evidence could never be permitted to divest her title. Besides, it is not inconsistent with her ownership of a part of the premises. 6. A petition to this court is produced, verified by Mrs. Codwise in 1824, wherein she prays to be appointed special guardian for her infant children, to mortgage their interests in the whole premises in question. She proposed to join in the mortgage, and the petition states that her husband was seised in fee in part, and held a part of the lands as tenant by the curtesy. This was literally true ; and there is nothing in the petition at war with Mrs. C.'s exclusive ownership of all the premises in controversy save the parcel conveyed by George Bowne, or any other of the separate parcels of the premises. The same may be said of the mortgage executed by her under the order founded upon the petition. 7. It is proved that Mrs. C. solicited the complainants to join with her in 1837, in executing a mortgage on the whole of the premises to David Wood. Assuming what is not proved, that she represented to them that their interest was small, and that it was confined to the small tract in the rear bought of Robert H. Bowne, I do not perceive how it can affect her title to the tract now under consideration. If the complainants had an interest in any part of the whole

premises, it was perfectly right and proper for them to execute the mortgage. The use made of the money is another matter, and has no bearing upon this point.

I have perhaps devoted too much space to these objections. Suffice it to say that they do not in any manner impair or affect Mrs. Codwise's title to the parcel colored yellow on the map. She is the sole owner of that parcel, in fee, and the bill as to that is not sustained.

II. The parcel colored red on Bridges' map, being the gore between the yellow parcel and Burling Slip.

It appears from the partition deed before mentioned, that this ground in 1799, belonged to John Riker. The same fact appears by the recital in the deed from the corporation of the city to Codwise and wife in 1803. Although in describing the length and breadth of the lands thereby conveyed, that deed gives only 37 feet in breadth throughout, which is nine inches less than the breadth of Mrs. Codwise's original inheritance; yet it bounds the granted premises in front by Front-street, in the rear by South-street, on the easterly side by George Bowne, *and on the westerly side by Burling Slip ;* so that, by its description taken together, it conveys the gore in question. The deed, as we have seen, required Mr. Codwise to fill up and make a street 25 feet in width, along the westerly side of the lands thereby granted. How or when the corporation became entitled to this gore, is not disclosed by the evidence. They assumed to convey it by this deed, and there is abundant evidence from his mode of building upon the land, that Mr. Codwise supposed the title in the gore to be vested in himself and his wife by that conveyance.

If this gore did not belong to him, he was liable to lose the whole front of the five stores on the slip, and thereby be deprived of any access to the residue of such stores ; and the gore would cut off nearly six feet of the front and whole westerly side of one of the Front-street stores, and the whole westerly wall of one of the South-street stores. In short, the loss of the gore would render about half of the valuable property in controversy utterly useless. The expense of these improvements was necessarily very great; and the mode in which they were carried

Dickinson and Wife *v.* Codwise and others.

out is proof conclusive that George Codwise Jr. supposed he had acquired a title to the gore. In 1810, when the mortgages were given to Arden, he described the property as bounded on Burling Slip. These facts prove that the deed of the corporation in 1803, was intended to convey the gore, and was accepted and acted upon by Mr. Codwise, as having that effect. In this state of the case, the deed for the gore executed by the corporation to George Codwise Jr. dated February 21, 1812, can only be regarded in the light of a confirmation of the prior grant, and cannot affect the title of Mrs. Codwise under that grant, at the suit of those claiming under her husband.

If, however, I am wrong in this view of the transaction, there is another ground on which Mrs. Codwise's title to the gore will be maintained in equity.

Assuming, as I did in the outset, that the large parcel colored yellow, belonged to her by inheritance ; her husband in 1812, and for many years prior to that time, was in possession of that parcel as tenant for his own life, and she was entitled to the remainder in fee. He had made very extensive improvements on the premises with moneys raised, in a great measure, upon the mortgage of her estate in remainder ; and had so made those improvements that the title to the gore in question had become indispensable to their use and enjoyment. Indeed, in reference to the yellow tract, the stores were so erected that no one of them, upon his death, would belong wholly to Mrs. Codwise, and without the gore, five of them would be inaccessible and of no value.

Under these circumstances the deed of February 21, 1812, was obtained, by which the gore was conveyed to her husband. It cannot be pretended that Mr. Codwise purchased the gore for his separate use, or for any purpose distinct from the use and possession of the ground in the rear of it which belonged to his wife. The gore could not be used separately for any valuable purpose. I cannot doubt but that he bought it to constitute a part of the whole plat of ground on which he had erected the buildings, and with no thought of its being capable of severance.

As the husband of Mrs. Codwise, in the possession of a life

estate in her lands, *jure mariti*, he had a duty to perform which was incompatible with the purchase of this gore for his own exclusive benefit. This duty was rendered the more imperative by the manner of constructing the stores, and the means by which they were constructed, to which I have before alluded.

In the language of Lord Manners, (*Nesbit* v. *Tredennick*, 1 Ball & B. 46—7,) he obtained this grant of the gore, "by "either being in possession, or standing behind the back of the "remainderman," and "he shall not retain the same for his own "benefit, but hold it in trust." Mr. Codwise used the means given to him by his position as husband, and obtained this grant.

The general principle of equity which prohibits a purchase by parties placed in a situation of trust or confidence with respect to the subject of the purchase, has been steadily and uniformly enforced, from the time of Lord Keeper Bridgman in 1670, (*Holt* v. *Holt*, 1 Cha. Cas. 190,) to the present day.

In *Greenlaw* v. *King*, (5 London Jurist Rep. 18, Jan. 15, 1841,) Lord Chancellor Cottenham, in an able opinion, declared that this rule of equity was not limited in its application to a particular class of persons, such as trustees, guardians, or solicitors. That it went much deeper, and the rule was one of universal application, affecting all persons who came within its principle, which was, that no party could be permitted to purchase an interest, where he had a duty to perform which was inconsistent with the character of purchaser.

In that case Lord Cottenham applied the rule to the purchaser of an annuity which by act of parliament, the incumbent of a rectory was authorized to charge upon the living, for the purpose of building a new rectory house. The amount to be borrowed on the annuity was not to exceed £2000, and by the act, the loan and annuity were to be made with the consent of the person who afterwards purchased the annuity, and made the loan. As he was thus selected to exercise a control over the incumbent in reference to the amount and terms, he was deemed incapacitated to act in the matter in his own behalf.

In *Van Epps* v. *Van Epps*, (9 Paige's R. 237,) Chancellor Walworth fully adopted the principle as expressed by the

Chancellor of England in *Greenlaw* v. *King*, and applied it to the purchase by a junior mortgagee, (who was a trustee,) of the mortgaged premises, at a sale under the foreclosure of the senior mortgage. And in *Torrey* v. *Bank of Orleans*, (9 ibid. 649,) the same learned Chancellor applied the principle to the purchase under a mortgage sale, by the cashier of a bank which had assumed the payment of the mortgage.

In *Tanner* v. *Elworthy*, (4 Beavan's R. 487,) on the marriage of R. Elworthy, two leasehold estates for years which were determinable on certain lives specified, and contained no covenants for renewal, were settled in trust for R. Elworthy for life, remainder to his wife for life, and remainder to the children of the marriage, subject to the appointment of R. E. The settlement provided that if so minded, R. E. might procure new leases, and insert the life of a child of the marriage. He procured a new lease of one of the estates, pursuant to that provision. The other leasehold he procured to be renewed in his own name, without reference to the trust, and never conveyed it to the trustees of the settlement. He was held to be a trustee of this leasehold for those claiming under the settlement, to the extent of the legal interest thus acquired. Lord Langdale, M. R., said, that being in possession of a partial interest under the settlement, he could not take an enlarged interest for his own benefit to the exclusion of the persons entitled under the settlement. A similar decision was made by Vice-Chancellor Knight Bruce, in *Waters* v. *Bailey*, (2 Younge & Collyer's New Cases in Chancery, 219,) where the tenant for life was ignorant of the existence of any subsequent interests, and supposed that she had an absolute power of appointment. And see *Giddings* v. *Giddings*, (3 Russ. 241,) Lewin on Trusts, 203, 204.(*a*)

If therefore the deed of 1812, first conveyed the title of this gore, it vested in Mr. Codwise in trust for his wife ; and as we have every reason to believe that he intended the purchase should be a mere accession to the ground in its rear, and took the title for no other purpose, the rule of equity but carries

---

(*a*) See on this point, *Campbell* v. *Johnston*, ante, p. 148.

out that intent, and there is no occasion to suppose that there was fraud either actual or constructive, in taking the conveyance to himself.

The gore in question belongs to Mrs. Codwise in fee, and the bill fails as to that portion of the premises.

III. The parcel colored blue on the map made by Bridges, adjoining the first parcel on the east, and which was conveyed to George Codwise Jr. by George Bowne, May 25, 1804.

This was a distinct purchase of land in which Mrs. Codwise never had any prior interest. It was not necessarily connected with the other property. It was doubtless very convenient and advantageous to the judicious improvement of the ground fronting Burling Slip, and it has been built upon in connection with that ground as an entirety. But this is not a case of confusion or admixture of property which brings it within the strict rule of the common law on that subject. *Hart* v. *Ten Eyck,* (2 J. C. R. 62, 108.)

The boundaries of the Bowne parcel are readily ascertained. The line, it is true, cuts through several stores, but that is as likely to occasion injury to the owners of the Bowne parcel as it is to Mrs. Codwise as the owner of the two parcels before mentioned.

The complainants in right of Mrs. Dickinson are seised of an undivided interest in this parcel. Mrs. Codwise is entitled to her dower in it, and also to sundry other interests from her deceased children, which will be adjusted in the decree.

IV. The parcel colored green on Bridges' map, situate in the interior of the block, conveyed April 16, 1823, by Robert H. Bowne to Mrs. Codwise.

The facts in regard to this parcel establish a contract of purchase made for it by G. Codwise Jr., before he built on the lands in dispute, that he did not pay the purchase money, but he took possession of the parcel, and it has always been occupied since as a part of those lands.

On his death it descended to his heirs in equity, and it belonged to them when Mrs. Codwise sold and conveyed lot 29

Burling Slip, of which it forms a part.  If that sale was authorized, she is to account for the value of this parcel, and as executrix, she is to be allowed for the amount paid by her to R. H. Bowne.

V.  The parcel colored orange on Bridges' map, which was conveyed to George Codwise Jr. by William Cooper, March 29th, 1804.

One of the stores built by G. Codwise Jr., on Front-street, covers the whole of this piece, to the depth of 60 feet ; and the store No. 29 Burling Slip covers about ten feet of the rear of the same piece.

There is nothing to distinguish this parcel from the blue piece, conveyed by George Bowne.  It therefore belonged to George Codwise Jr. at the time of his death.

As the first and second parcels are the property of Mrs. Codwise solely, and the fourth and fifth, as well as a few feet from the rear of the third, have been sold by Mrs. Codwise, and are now possessed adversely to the complainants; the partition sought by the bill must be limited to the residue of the third parcel of the premises in question.

The mortgage to Wood, which still incumbers the third parcel, together with the land between it and Burling Slip, will be charged upon Mrs. Codwise's separate interest in the property, or be paid out of the proceeds of the third parcel, as may appear just on the account which must be taken.

Although the bill is, perhaps, deficient in its statements in regard to the personal estate, yet an account of it is indispensable to ascertain the equities of the parties in reference to the real estate.  The rents and income of that owned in common, and the payment of the incumbrances thereon, and the debts of George Codwise Jr., subsisting at the time of his death, are so intermingled with the administration of his personal effects, that the whole account should be taken at the same time.

It is claimed in behalf of Mrs. Codwise, that she is entitled to throw upon the lands owned in common, the whole amount of the mortgages which were placed upon this property, as

well as her other property, by George Codwise Jr., in his life time, as being his debts ; and that on paying those mortgages, she is entitled to be subrogated as a surety.

It is not proved that George Codwise Jr. borrowed any money on these mortgages for any purpose other than the filling up and improving the lands in question, and erecting the buildings thereon.   The expenditures for those purposes were undoubtedly large enough to account for all the mortgages existing at the time of his death.   Moreover, it is proved that he applied funds of his own to that purpose.

After this great lapse of time, it is impossible to ascertain with any precision what portion of the loans made by the testator were used by him for other purposes, or what portion of his own property and resources was contributed to these erections and improvements.   I think it will be sufficiently favorable to Mrs. Codwise to assume that all the mortgages which were outstanding at his death were executed for loans which were laid out on this property, except such mortgages as appear to have been given for purchase money.

There is no doubt that Mrs. C. is entitled to be subrogated, wherever she has paid a mortgage on her property, given for the debt of her husband.   But is this such a debt ?   In form, the mortgages were executed to secure the payment of his bonds.   In substance, they were made to raise money, (or to pay off money previously loaned,) to improve and render productive, a plat of ground which principally belonged to her in her own right, and which was before of little value, and yielding, if any, only a trifling income.   These improvements were substantial and permanent, and on the death of her husband, they became (so far as her portion of the lands was concerned,) her absolute property ; and in the portion belonging to him, she succeeded upon that event, to a valuable dower interest.

It is plain to my mind, that to the extent of the proportion of this debt which went to the improvement of Mrs. Codwise's land, it is and was in equity her debt ; and the residue of it was the debt of her husband.   It follows that she has no rights as a surety, except in reference to the latter portion of the debt ; and thus restricted, those rights do not affect the result in this case.

As the husband was entitled, during his life, to the income of Mrs. Codwise's portion of the lands, whether improved or unproductive, it will be proper to set out in the apportionment of the debt and income, at his death.

Starting from that period, there are two modes of taking the account in reference to this branch of it.   1. To take the aggregate net receipts from the aggregate property in question, and apply them to the reduction of the debt, with any other funds applicable to that object, until it is extinguished.   2. To apportion the debt at that date, according to the relative value of Mrs. Codwise's sole property, and that of which her husband died seised, and thereafter to keep the account of debt and interest on the one hand, and of net receipts on the other hand, separate and distinct.

The latter mode is probably the most exact, and the former the most simple.   If it turns out that the debt has been or should have been extinguished at any period prior to this suit, from that time forward, the apportionment of rents and income, will necessarily have to be made.

And in case the debt is apportioned as I have suggested, at the outset of the accounting, regard must be had in the valuation of the parcels which came from William Cooper and Robert H. Bowne, to the prices paid for them, as well as their effect in enhancing the revenue from the other portions of the premises connected with them in building.   The latter consideration is to be applied also to the valuation of the parcel conveyed by George Bowne.

The next point which occurs on this branch of the case, is the effect of the sales made by Mrs. Codwise, of lot No. 29 Burling Slip, and the easterly lot on Front-street, both of which lots embrace portions of the premises which descended to the heirs of G. Codwise Jr.   The lot at the corner of Front-street and Burling Slip, belonged wholly to Mrs. Codwise.   The bill alleges that these sales were invalid to divest the title of the heirs, because they were made at private sale.   The matter is not presented to me in a form which will make my opinion on that question of any importance, and I have forborne to examine it.   I can only direct that the complainants may have the op-

tion of affirming those sales, in such a manner as to have the proceeds of the portion sold, whereof the testator died seised, brought into the accounting of Mrs. Codwise. The income to the time of such sales, will be a proper part of the account, whether the sales be affirmed or not.

The accounting will of course embrace all the personal estate of the testator, and all his other real estate which has been sold or appropriated by the executrix, or of which she has received the income or price. And also of the debts owing by the testator and paid by her, and the charges and expenses of the administration.

It will further embrace the income of that part of the real estate in controversy, of which the testator was seised, and which Mrs. Codwise has controlled since his death; and her payments from time to time in discharge of the mortgage debts, apportioned as being chargeable on that part of the premises.

The difficulties incident to the taking of this account are not to prevent its proceeding, although we may well hope that they will induce a compromise and settlement of this unhappy controversy. In reference to the personal estate, those difficulties are caused by the omission of the executrix to make an inventory, and to keep an account of her transactions. And if trouble, expense and loss, ensue to her, she has no reason to complain. As to the real estate, the fault, if any, is imputable to Mr. Codwise, and his mode of improving the property, without having the title vested to correspond with his buildings and lots. No intentional blame, in my judgment, rests upon any one. The tender and entire confidence in his wife, which Mr. Codwise expressed in his will, made the day before he died, and containing his last words to her and his children on this subject, shows that he did not anticipate the possibility of difficulty or dissension in his family. He doubtless expected that with the aid of his sons, this property would be kept entire, furnishing the means for bringing up his children, and of supporting his wife during the residue of her life; and upon her death that it would go to their descendants, who inheriting from both, would take the same shares, as if either one or the other had owned the whole. The course pursued by Mrs. Codwise af-

ter his death, indicates that she then entertained the same views and feelings. Hence she made no inventory, and kept no accounts.

No argument against an account is to be derived from these considerations.

The bar of six years set up in the answer is not applicable to this case. Mrs. Codwise was the testamentary guardian of Mrs. Dickinson, who did not become of age till 1829. The bar provided for such a case in the Revised Statutes is ten years. I believe it has not yet been settled whether the Revised Statutes, relative to the time of commencing suits in equity, applied to causes of action existing when those statutes went into operation. In *Van Hook* v. *Whitlock*, (3 Paige's R. 417, 8,) the chancellor decided that a plea, setting up the statute as it is done here, insisting on a bar not applicable to the case, will not enable the party to avail himself of a different bar provided by the same statute. The same case decides that a general reference to the statute, without specifying the particular bar, will not avail. And in this respect the same certainty is required in an answer, that is enforced in a plea. I need not therefore decide whether the Revised Statutes affect the complainants claim for an account.

If the ten years limited by those statutes were made the limit here, it perhaps would not influence the result. The receipts of Mrs. Codwise, from the death of her husband, would at all events be set off against her payments on the mortgage debts from time to time after that date ; and those payments, and her claim upon Mrs. Dickinson for her education and maintenance, may suffice to balance all that is chargeable to her prior to April 20, 1832.

This leads me to speak of the claims last mentioned. Mrs. Codwise, on the accounting, should be allowed in her separate account with the complainants, for the education and maintenance of Mrs. Dickinson during her minority. Also for such board, maintenance, &c., since her marriage, both of herself and husband, as have not been otherwise paid and satisfied, provided there was an intention to charge them therefor.

As to the debt of James N. Codwise to the estate, if there

were any such, Mrs. Codwise, as his devisee and legatee, is accountable for the same to the extent of the property which came to her from him.

If any point which ought to be adjusted in this decree has escaped me, it can be brought forward on settling the draft of the decree.

As to the competency of Charles F. Codwise as a witness. He had been declared a bankrupt, but had not been discharged. Upon authority it would seem that he was incompetent. *Butler* v. *Cooke,* (Cowp. 70;) *Masters* v. *Drayton,* (2 T. R. 496.) I do not, however, deem his testimony important in this stage of the case, and the question need not be determined. If he has since received his discharge, the difficulty may be obviated by examining him anew before the master.

No one having appeared for the assignee in bankruptcy, the rights of Mrs. Van Rensselaer will, without examination, be deemed to be such as she has claimed, as between her and the assignee.

As the circumstances show an exclusion by Mrs. C. of her co-tenants in common, the complainants are in strictness entitled to a receiver. In reference to all the lands held in common, excepting the store and lot No. 90 South-street, the difficulty of apportioning the rent to which the parties are entitled in common, is so great, that Mrs. Codwise may give security for such rent; and in that case, the receivership will be extended only to number 90 South-street.

The decree will reserve all further questions and directions.