•McKinney, J.,
delivered the opinion of the Court.
*691 This was a bill for a divorce, and likewise to have the title to a tract of land divested out of the defendant Norman and vested in the complainant. The Chancellor decreed for the complainant, both as against the husband and the defendant Norman. The former acquiesced in the decree of divorce, and the case is brought here by Norman, in whose behalf it is insisted that the decree divesting him of title to the tract of land in the pleadings mentioned is erroneous.
The facts upon which the question arises are these: On the 31st of January, 1835, some time after the marriage of the complainant and the defendant William Ames, one Lawrence Sypert conveyed to them jointly a tract of land situate in Wilson county, containing fifty-four acres, for the consideration, as recited in the deed, of three hundred and thirty-three dollars. This deed of conveyance was properly proved and admitted to registration on the day of its execution. The bill alleges, and the deed recites, and there is proof tending to establish the factj that the purchase - money of said tract of land was part of the distributive portion of the complainant of the estate of her deceased father. On the 14th of May, 1853, said tract of land was sold at execution sale, in satisfaction of a judgment against the defendant William Ames; and the defendant Norman, as a creditor of Ames, afterwards redeemed the land from the purchaser at said sale, previously to the filing of the present bill, and, by virtue of the title thus acquired, he resists the right of the complainant to recover the same. And the question for our determination is, can he successfully do so ? Upon this precise question we have found no direct adjudication, but upon principle we think the question is free from doubt.
The first question to be considered is, had the husband *692 such an interest in tbe land of wbicb be and bis wife were jointly seised, as was subject to seizure and sale on execution by bis creditors? And if so, is tbe interest or title of tbe purchaser at execution sale subject to be divested or in any way affected by a subsequent divorce a vinculo matrimonii granted to tbe wife?
First. By tbe common law, tbe husband and wife are as one person in law: tbe legal existence of tbe wife is incorporated into that of tbe husband; and though, in modern times, exceptions to this doctrine have been introduced, tbe general principle still exists. As one of tbe necessary results of this unity of persons in husband and wife, it has always been held that where an estate is conveyed or devised to them jointly, they do not take in joint tenancy: constituting one legal person, they cannot be vested with separate or separable interests; they are said, therefore, to take by entireties; that is, each of them is seised of tbe whole estate, and neither of a part. And this tenancy may exist whether tbe estate is in fee, for life, for years, or other chattel interest, and whether tbe property be in possession, reversion, or remainder. Co. Lit., 187, b.; 1 Bright’s Husband and Wife, 25. As a consequence peculiar to this tenancy, it is laid down in the books that, during their joint lives, neither can alien the estate thus held without the consent and concurrence of the other, and the survivor takes the whole estate: neither can sever the joint interest: the whole estate belongs to the wife as well as to the husband, and the husband cannot by his own conveyance, the wife not joining therein, divest her estate. 1 G-reenleaf’s Cruise, 865; 2 Bl. Com., 182; 2 Kent’s Com., 132; 4 Kent, 363.
From the peculiarity of this tenancy, the unity and *693 indivisibility of the seisin, there is some confusion in the cases respecting the power of the husband alone to make any conveyance or disposition of the land thus held during their joint lives, and also as to the right of creditors of the husband to subject the same to the satisfaction of the husband’s debts. But upon examination of the authorities, it appears to be settled that during their joint lives the husband may dispose of the estate. He may lease or mortgage it, or it may be seised and sold upon execution for his debts. The doctrine, properly understood, is that the husband, without the wife’s joining him in the conveyance, cannot alien the estate, so as to affect the interest of the wife in case she survives him, as in that event she will be entitled to the whole. 4 Kent’s Com., 363. Nor will the wife’s interest be affected by the attainder of the husband: she will, on surviving, take the whole estate. By the attainder of the husband of felony, the crown will not acquire the fee, but only the pernancy of the profits during the coverture of the wife. Co. Lit., 351.
It seems, therefore, that notwithstanding the peculiar nature of this tenancy, the husband, during the coverture, acquires substantially the same rights, and power of disposition of the estate thus held, that he does in regard to the wife’s individual estate owned by her at the time of her marriage. Consequently it follows that the husband, without the consent or concurrence of the wife, can charge such estate at law with his debts; that he may transfer it; that it may be seized and sold by his creditors. But the assignee of the husband, or purchaser at execution sale, can acquire no other or greater interest than was vested in the husband; and, consequently, he holds in subordination to the contingent right of the wife, who, in case she *694 survives tbe husband, becomes absolute owner of the whole estate. So, on the other hand, if the husband survives, the purchaser from him or at execution sale becomes owner in fee of the entire estate. 1 Dana’s Rep., 242; 15 Wend., 615; 19 Wend., 175.
Secondly. It being established that the interest of the husband in such an estate may be sold on execution for the satisfaction of his debts, we proceed to inquire whether the title of the purchaser is liable to be affected by a divorce a vinculo afterwards granted to the wife.
The decree in this case would seem to take it for granted that, upon a dissolution of the marriage by a divorce at the suit of the wife, the same legal consequences follow, in all respects, as if the marriage had been dis~ solved by the death of the husband. This is a very erroneous assumption, so far at least as relates to the question under consideration.
In England, divorces a vinculo matrimonii are granted only for such causes as, by the ecclesiastical law, are sufficient to avoid the marriage in the spiritual Court; and in such cases the marriage is declared void as having been absolutely unlawful ah initio. 1 Black. Com., 435, 440. In a divorce of this.kind, grounded upon the nullity of the marriage contract, it is said in the books that the husband acquires no right over the wife’s property; though, in some of the authorities, a distinction appears to be taken between the wife’s personal and real property. If the husband, before the divorce, had disposed of the goods of the wife without collusion, it seems she was without remedy; but if the sale or gift were collusive, she might recover the goods so far as they could be traced, and for the rest, as money, etc., she might sue in the spiritual *695 Court. 2 Brigbt’s Husband and Wife, 864, 365. This distinction perhaps arose out of the doctrine maintained by the Courts of common law, that marriages contrary to the ecclesiastical law, though voidable, were not ipso facto void until sentence of nullity were pronounced.
In regard to the wife’s real property, it is settled that if the husband aliened the land of the wife, of which he was seised in right of the wife, and a divorce was after-wards obtained, the wife’s right remained unaffected by the husband’s conveyance: such conveyance did not work a discontinuance of her estate, and, by construction of the statute 32 Henry YIIL, it was held that she might immediately enter.
And, more directly to the point under consideration, it is laid down that if husband and wife purchase an estate jointly and are disseised, and the husband releases, and afterwards they are divorced, the wife shall have the moiety, though before the divorce there were no moieties, for the divorce converts it into moieties. Bright’s Husband and Wife, vol. i., 25, 162, 165; Ibid, vol. ii., 364.
This must necessarily be so; for although, in such case, the relation of husband and wife existed de facto at the time the conveyance was made to them jointly, yet, in contemplation of law, that unity of persons out of which this anomalous tenancy springs, and on which alone it depends as a mere incident, never did exist; and, as some effect must be given to the conveyance, the divorce is regarded as having severed the entirety, and turned it into moieties.
It would seem reasonable that this principle should be held equally applicable to cases where a marriage lawfully contracted is dissolved by a divorce a vinculo for some *696 supervenient cause, as frequently happens under our law, though its application is perhaps not so easy in such cases as where the marriage contract was void ah initio.
If the rights of husband and wife in relation to an estate held by entireties are not altered by the decree declaring the divorce, what becomes of the joint estate? what are their respective rights in the future in regard to it ? They are no longer one legal person: the law itself has made them “twain.” They are no longer capable of-holding by entireties; the relation upon which that tenancy depends has been destroyed: the one legal person has been resolved, by judgment of law, into two distinct, individual persons, having in the future no relations to each other; and with this change of their relations must necessarily follow a corresponding change of the tenancy dependent upon the previous relation. As they cannot longer hold by a joint seisin, they must hold by moieties. The law, in destroying the unity of persons between them, has, by necessary consequence, destroyed the unity of seisin in respect to their joint estate; for independent of the matrimonial union this tenancy cannot exist. And hence it has been held that a conveyance to a man and woman while single, and who afterwards intermarry, as they took originally by moieties, they will continue to hold by moieties after the marriage. 1 Institutes, 187, h.
But if this reasoning be correct, as between the husband and wife, the question remains, what effect has the divorce upon the rights of a third person who has acquired the interest of the husband by purchase at execution sale prior to the divorce ?
We are of opinion that the subsequent divorce has no effect whatever upon the rights of such purchaser. It is *697 true the purchaser at execution sale succeeds merely to the rights of the husband in the estate; that is to say, he acquires no other or different right, either as regards the quantity or quality of estate, than was possessed by the husband; and he takes it subject to all the rights, legal ;or equitable, existing in favor of third persons at the time of the sale. But still, the purchaser is not, to every intent and purpose, placed in' the shoes of the husband. On the contrary, he holds the estate independent of the husband and of his future creditors, and entirely free from all future accidents or contingencies that might, as against the husband,- if the title had remained in him, have directly or indirectly affected the estate.
The purchase, in the present case, was not made in view of the contingency of the wife’s divorce at some future period, and cannot be affected by it.
The defendant by his purchase became invested with the right of the husband as it existed at the time of the sale; that is, a right to occupy and to enjoy the profits of the land as owner during the joint lives of the husband and wife; subject to the contingency that if the complainant survives her former husband, his estate will then terminate; but if the husband survives, he will become absolute owner of the whole estate.
The only remaining inquiry is, whether the act of 1849-50, ch. 36, has any application to this case. And we think it has not. This act only protects from the creditors of the husband the interest in the wife’s lands vested in him jure uxoris. In other words, it is applicable only to cases where the fee is in the wife alone, and not to cases where they are jointly seised in fee.
There is much force in the suggestion that to extend *698 the act by construction to a case like the present would place it in the power of the husband, by resorting to mere forms of conveyancing, to put his entire real estate beyond the reach of his creditors.
No equity can arise in favor of the complainant in this case in consequence of the land having been purchased with money derived from her father’s estate. The money had been previously reduced to possession by the husband, and in law it thereby became his money.
The only claim that can be admitted, on the part of the complainant - in the present case, rests alone upon the doubtful contingency of her' outliving her former husband. In that event, she will instantly become absolute owner of the entire tract of land; in the contrary event, she will have no interest in the land whatever.
The decree will be reversed, and the bill be dismissed as to the defendant Norman; but without prejudice to any future right which by possibility may arise in complainant’s favor.