Chandler, by Moore, Guardian, *v.* Cheney.

CHANDLER, by MOORE, Guardian, *v.* CHENEY.

HUSBAND AND WIFE.—*Conveyance.*—*Estates by Entireties.*—A husband and wife, though not thus described in a deed of conveyance of real estate executed to them, take under such deed as tenants by entireties.

SAME.—*Tenants by Entireties and Joint Tenants.*—*Distinction.*—The same difference which existed at common law between joint tenants and tenants by entireties continues under our statute. In both the title and estate are joint, and both have the quality of survivorship; but the marked difference between the two is this: in a joint tenancy, either tenant may convey his share to a co-tenant, or to a stranger, who thereby becomes tenant in common with the other co-tenant; while neither tenant by the entirety can convey his or her interest so as to affect their joint use of the property during their joint lives, or to defeat the right of survivorship upon the death of either of the co-tenants. There may also be partitions between joint tenants, but not between tenants by entireties.

SAME.—*Execution.*—*Fraud.*—While such an estate exists, no interest in it can be sold on execution for the debts of the husband or wife, but the conveyance creating it may be set aside for fraud.

SAME.—*Essentials.*—From the nature of the estate and the legal relation of the parties, there must be unity of estate, unity of possession, unity of control, and unity in conveying or incumbering it.

SAME.—*Mortgage by Husband.*—A mortgage upon such an estate executed by the husband alone is void.

APPEAL from the Shelby Circuit Court.

BUSKIRK, J.—This was a proceeding to perpetually enjoin the sale of certain real estate, under and by virtue of a decree of the foreclosure of a mortgage. The complaint alleges, in substance, that Stephen Guile and wife, on the 3d day of September, 1866, conveyed, by general warranty, a certain house and lot in Shelbyville, Indiana, to Eldridge G. Mayhew and Sarah Mayhew; that at the time of the said conveyance, the said Mayhew and Mayhew were husband and wife; that on the 20th day of February, 1867, the said Eldridge G. Mayhew, by his separate deed, mortgaged the said lot to the defendant, Whitfield Chandler, to secure the payment of a note for three hundred and thirty dollars, dated on the 4th day of April, 1865, which mortgage was on the same day recorded in the office of the recorder of said county; that on the 13th day of May, 1867, the said Eld-

ridge G. Mayhew and Sarah Mayhew, his wife, by a general warranty deed, conveyed the said lot to one Elijah Hopper, Sen., for the sum of seven hundred and fifty dollars; that by several successive conveyances, the plaintiff became the owner of the said property, under and through the deed from Mayhew and wife, made subsequent to the execution of the mortgage by Mayhew to Chandler; that at the October term, 1867, of the Shelby Circuit Court, the said Chandler obtained a decree of the said court, foreclosing the said mortgage, and decreeing the sale of the said property; that the said Chandler had caused to be issued by the clerk of the said court a copy of the said decree, and was proceeding, through the sheriff of said county, to sell the said property, under and by virtue of the said decree, and would do so unless enjoined from so doing; and that the said mortgage executed by the said Mayhew to the said Chandler was illegal and void, for the reason that the said Mayhew and his wife held the said property as tenants by entireties, and that a mortgage or deed executed by one joint tenant by entirety was void.

The prayer of the complaint was for a perpetual injunction enjoining the sale of the said property under the said decree of foreclosure, to quiet the title of the plaintiff thereto, and to remove any cloud that had been cast upon *the title* of the plaintiff by the existence of the said mortgage and decree of foreclosure.

The appellant demurred to the complaint, upon the ground that it did not contain facts sufficient to constitute a cause of action. The demurrer was overruled, and the appellant excepted.

The appellant then answered in two paragraphs. The first was a denial, and the second in avoidance; but as no point is made upon the answer, we do not deem it necessary to set out the second paragraph thereof.

The appellee replied by a denial of the allegations contained in the second paragraph of the answer. The cause was, by the agreement of the parties, submitted to the court

for trial, which resulted in a finding for the plaintiff. A motion for a new trial was made and overruled, and an exception was taken.

The court rendered a decree perpetually enjoining the sale of the said property for the payment of the said decree of foreclosure; that the said judgment of foreclosure as to the said lot should be held of no force or validity; that the title of the said plaintiff in and to the said lot should be quieted; and that any cloud that rested on the title of the plaintiff by reason of the said mortgage and judgment of foreclosure be, and the same was, thereby removed.

The appellant has assigned two errors; first, that the court erred in overruling the demurrer to the complaint; and, second, in refusing a new trial.

The great and leading question in the case is, whether Eldridge G. Mayhew had, at the time he made the mortgage to Chandler, a mortgageable interest in the property in dispute, which he could mortgage by his separate deed. The solution of this question depends upon the nature and character of the estate which was vested in Eldridge G. Mayhew and Sarah Mayhew, by the deed from Guile and wife. If they held the property as tenants in common, there can be no doubt as to the validity of the mortgage so far as it affected the interest of Eldridge G. Mayhew, the mortgagor. If they held the property as tenants by entireties, then the mortgage will be void, unless the husband has the right to incumber by his separate deed property held by him and his wife as tenants by entireties.

It is maintained by the appellant that Eldridge G. Mayhew and Sarah Mayhew were not seized of the said property as tenants by entireties, for the reason that they are not described as husband and wife in the deed to them, from Guile and wife.

It is maintained by the appellee that the character of the estate does not depend upon the manner in which the grantees are described in the deed, but upon the fact that they were husband and wife at the time the deed was made.

It is also maintained by the appellant that, conceding that Mayhew and his wife were seized as joint tenants by entireties the husband can convey, lease, or mortgage the property by a separate instrument without his wife joining with him.

On the other hand, it is maintained by the appellee, that whatever may have been the rule at common law, under our statute the husband can neither lease, mortgage, nor convey property held by him and his wife as tenants by entireties, unless his wife joins him in the execution of the lease, mortgage, or deed.

The first question that is presented for our decision is, whether it is necessary to the creation of an estate by entireties, that the persons to whom the conveyance is máde should be described in the deed as husband and wife. The learned counsel for appellant, in support of their position, that it must affirmatively appear in the deed that the grantees are husband and wife, have referred us to 1 Washburn Real Prop. 577, where it is said:

"A still more peculiar joint estate is that which belongs to a husband and wife, where the same is conveyed to them as such." It is claimed that the words "as such" render it necessary for it to be averred and shown upon the face of the deed that the grantees were husband and wife. The above authority seems to support the view taken by appellant, but we are of the opinion that it is in conflict with the very decided weight of authority. But whatever may be the rule at common law, we are of the opinion that under our statute it is not necessary that such fact should be stated in the deed. Sections 7 and 8 of the act concerning conveyances, 1 G. & H. 259, read as follows:

"Sec. 7. All conveyances and devises of lands, or of any interest therein, made to two or more persons, except as provided in the next following section, shall be construed to create estates in common and not in joint tenancy; unless it shall be expressed therein that the grantees or devisees shall hold the same in joint tenancy and to the survivor of them,

or it shall manifestly appear, from the tenor of the instrument, that it was intended to create an estate in joint tenancy.

"Sec. 8. The preceding section shall not apply to mortgages, nor to conveyances in trust, nor when made to husband and wife; and every estate vested in executors, or trustees as such, shall be held by them in joint tenancy."

To create a joint tenancy, under the above sections, between persons who are not husband and wife, it is necessary that the intention shall be expressly declared in the instrument, or it must manifestly appear from the tenor of the instrument. And to create a joint tenancy between executors or trustees, the deed must be made to them as such; that is, they must be described as executors or trustees. But the language of the statute is very different in reference to husband and wife. It provides for when the deed is made to husband and wife, that is, to persons who are husband and wife, but the statute does not require that they should be described as such.

This construction of the statute is in harmony with the ruling of this court in *Bevins* v. *Cline's Adm'r*, 21 Ind. 37, where it was held, "that where a deed is made jointly to a man and woman who are not married, they take by moieties, but if a deed of conveyance is made to a man and woman who are then husband and wife, they take as joint tenants by entireties, not by moieties.

It was held in *Stuckey* v. *Keefe's Ex'rs*, 26 Pa. St. 397, that "if husband and wife cannot take a conveyance by moieties, if they are absolutely incapable of receiving such a grant, it is clear that no words in the conveyance to them, however clearly expressed, can give them that capacity."

The position contended for by the appellant is, that the nature and extent of the estate created depends upon the words used in the deed of conveyance and not upon the actual relation that existed between the grantees. If this position is correct, it would result that an estate by entireties could be created between a man and woman who were not then husband and wife, if they were described in the deed as hus-

band and wife. We are of the opinion that when a deed is made to a man and woman, it may be shown by proof that they were actually husband and wife; and, on the other hand, if a deed is made to persons who are described in the deed as husband and wife, that it may be proved that they were not such husband and wife. The description of the grantees in the deed could not amount to more than presumptive evidence, and that presumption might be destroyed by proof showing the actual relation existing between them. If evidence *dehors* the deed is not admissible to prove that the grantees were husband and wife, such evidence would be equally inadmissible to prove that the grantees, though described as such, were not in fact husband and wife.

We have been unable to find any authority that fully sustains the view expressed by Mr. Washburn. The uniform language of the books is, that a deed made to husband and wife creates an estate by entireties; but we regard our statute as decisive of the question.

We are clearly of the opinion that the deed of conveyance, in the case under consideration, having been made to Eldridge G. Mayhew and Sarah Mayhew, and they being then husband and wife, created in them an estate by entireties.

The next question presented for our examination and adjudication is, whether Eldridge G. Mayhew, the husband, at the time of the execution of the mortgage to the appellant, had a mortgageable interest in the property in controversy.

It was a well settled rule at common law, that the same form of words, which, if the grantees were unmarried, would have constituted them joint tenants, will, they being husband and wife, make them tenants by the entirety. The rule has been changed by our statute above quoted. It requires that the intention to create a joint-tenancy shall either be expressly declared, or it must manifestly appear from the tenor of the instrument. But a conveyance to a man and woman, who are then husband and wife, creates an estate by entirety. The same difference which existed at common law between

Chandler, by Moore, Guardian, v. Cheney.

joint tenants and tenants by entireties continues to exist under our statute. In both, the title and estate are joint, and each has the quality of survivorship, but the marked difference between the two consists in this: that in a joint tenancy, either tenant may convey his share to a co-tenant, or even to a stranger, who thereby becomes tenant in common with the other co-tenant; while neither tenant by the entirety can convey his or her interest so as to affect their joint use of the property during their joint lives, or to defeat the right of survivorship upon the death of either of the co-tenants; and there may be a partition between joint tenants, while there can be none between tenants by entireties. See sec. 1 of "an act concerning the partition of lands," 2 G. & H. 361.

Estates by entireties are generally spoken of in the books as joint tenancies, but this is not strictly accurate. The confusion in the books would be greatly relieved, if they were designated as tenants in common, joint tenants, and tenants by entireties. If this were done, the name would indicate the nature and quality of the estate spoken of. It was held by this court in *Bevins* v. *Cline's Adm'r, supra*, that "at common law, if a conveyance be made jointly to a man and woman, who are not married, they take by moieties, as joint tenants, and either can sever such joint tenancy by a conveyance of his or her moiety; but if a conveyance of land be made to a man and woman, who are then husband and wife, they take as joint tenants by entireties, not by moieties; they are seized *per tout*, and not *per my*. Each, as well as both, is entitled to the use of the whole. Neither can sever the joint estate by his own act, as he can in case of an ordinary joint tenancy, but both must unite in the deed to effect a conveyance of any estate in any part of the whole. Nor, it would seem, could the separate interest of either be sold on execution. Indeed, there is no separate interest. See *Cox's Adm'r* v. *Wood*, 20 Ind. 54."

By the common law, if real estate is conveyed to a husband and wife, they are not thereby constituted joint tenants,

as in other cases of conveyances made to two persons; neither are they tenants in common, "for," says Blackstone, "husband and wife being considered as one person in law, they cannot take the estate by moieties, but both are siezed of the entirety *per tout, et non per my,* the consequence of which is, that neither the husband nor the wife can dispose of any part without the assent of the other, but the whole must remain to the survivor."

Lewis, C. J., in *Stuckey* v. *Keefe's Ex'rs,* 26 Pa. St. 399, defines this peculiar estate as follows: "A conveyance to husband and wife creates neither a tenancy in common nor in joint tenancy. The estate of *joint tenants is* a unit made up of divisible parts; that of husband and wife is also a unit; but it is made up of indivisible parts. In the first case there are several holders of different moieties or portions, and upon the death of either, the survivor takes a new estate. He acquires, by survivorship, the moiety of his deceased co-tenant. In the last case, although there are two natural persons, they are but one person in law, and upon the death of either, the survivor takes no new estate. It is a mere change in the properties of the legal person holding, and not an alteration in the estate holden. The loss of an adjunct merely reduces the legal personage *holding* the estate to an individuality identical with the natural person. The whole estate continues in the survivor the same as it would continue in a corporation after the death of one of the corporators. 1 Dana, 244; 7 Yerg. 319. This has been the settled law for centuries. The distinction may seem a nice one, but it is founded upon the nature of marriage, and the rights and incapacities which it establishes. Co. Lit. 6; 1 Thom. Coke, 853; 2 Bl. Com. 182; 5 T. R. 652; 2 Vern. 233; Skin. 182; 19 Wend. 175; 3 Rand. 179; 5 Johns. Ch. 431; 7 Yerg. 319; 1 Barr, 176; 6 Watts & S. 319."

Washburn, in his very valuable work on real property, vol. 1, p. 577, says: "A still more peculiar joint estate is that which belongs to a husband and wife, where the same is conveyed to them as such. If a man and woman, tenants

Chandler, by Moore, Guardian, *v.* Cheney.

in common, marry, they still continue to hold in common. But if the estate is conveyed to them originally as husband and wife, they are neither tenants in common, nor properly joint tenants, though having the right of survivorship, but are what are called tenants by entirety. While such estates have, like a joint tenancy, the quality of survivorship, they differ from that in this essential respect, that neither can convey his or her interest, so as to affect the right of survivorship in the other. They are not seized, in the eye of the law, of moieties, but of entireties."

Chancellor KENT, in his commentaries, says: "If an estate in land be given to the husband and wife, or a joint purchase be made by them during coverture, they are not properly joint tenants, nor tenants in common, for they are but one person in law, and cannot take by moieties. They are both seized of the entirety, and neither can sell without the consent of the other, and the survivor takes the whole."

It was held in *Doe* v. *Howland*, 8 Cow. 277, per SAVAGE, C. J., that "husband and wife holding lands by a conveyance to them, are not joint tenants. They are seized *per tout*, and not *per my*. They must both join in a conveyance. They are both necessary to make one grantor; and the deed of either without the other is merely void."

Bishop, in his recent work on the Law of Married Women, 621, says: "If the husband undertakes to alien the estate, it is nugatory as against the wife, who may enter as survivor on his death. The books contain a plenty of expressions from which it would even seem further to follow, that the sole conveyance of the husband, whether in terms broad or narrow, carries with it no estate, and is a mere nullity, not only as against the wife who did not join in it, but also as against himself." It is due to this learned author that we should state that he says that the husband has a sort of life interest of his own, distinct from his wife, in the estate by entirety, and this interest he can convey away. We will discuss that question further on in this opinion, where we think it will be made to appear that the husband has no in-

terest separate or distinct from his wife. This is certainly the rule in this State under our statute.

It was held in *Ketchum* v. *Walsworth*, 5 Wis. 95, that, "This species of tenancy is *sui generis*, and arises from the unity of husband and wife. As between them there is but one owner, and that is neither the one nor the other, but both together, in their peculiar relationship to each other, constituting the proprietorship of the whole, and of every part and parcel thereof. There can be no partition during coverture, for this would imply a separate interest in each; and for the same reason neither can alien, without the consent of the other, any portion or interest therein; and hence the legal necessity results, that the survivor must take the whole, for the estate being incapable of partition during the life of either, nothing could descend by the death of either. This consequence necessarily results from the nature of the estate, and the legal relation of the parties."

Having ascertained the nature of the peculiar estate by entirety, we proceed to inquire and determine whether Eldridge G. Mayhew had the legal right to encumber the property in question by a mortgage, without the consent and concurrence of his wife.

The learned counsel for appellant earnestly insist that the mortgage executed by Eldridge G. Mayhew alone was valid, and in support of such position refer to and mainly rely upon the following authorities: *Barber* v. *Harris*, 15 Wend. 615; *Jackson* v. *McConnell*, 19 Wend. 175; *Bennett* v. *Child*, 19 Wis. 362; *Ames* v. *Norman*, 4 Sneed, 683.

We do not think that the case of *Barber* v. *Harris, supra*, supports the position assumed. That was an action of ejectment brought to recover a tract of land. The plaintiff introduced in evidence a mortgage signed and acknowledged by Harris and his wife for the premises in dispute, and proved a statutory foreclosure of the mortgage and a purchase of the premises by himself. The defendant, for the purpose of showing that the mortgage was void and inoperative, read in evidence a deed of the premises covered by

the mortgage, executed by Peter W. Yates to the defendant, his wife, and their children who are named. The court below held that the plaintiff was entitled to recover two-tenths in fee simple. The Supreme Court, after discussing the nature of an estate by entirety, and holding that the husband cannot forfeit or alien the estate, because the whole of it belongs to the wife as well as to him, proceed to say as follows: "We need not, however, pursue this inquiry, nor express any definitive opinion upon the true construction of the deed to the defendant, his wife and children, because, during the life of the husband, he undoubtedly has the absolute control of the estate of the wife, and can convey or mortgage it for that period. By marriage he acquires, during coverture, the usufruct of all her real estate which she has in fee simple, fee tail or for life. If the wife survives, and is not precluded by her acknowledgment of the mortgage, she may then raise the question as to the nature and extent of the interest she took under this deed." The court in another portion of the opinion say: "The deed from Yates to the defendant and his wife and children, conveyed to them an estate which they held as tenants in common, the defendant and his wife together being the owners of one share, and that probably only for their lives."

The above case differs from the one under consideration in several essential respects. In that case it was doubtful from the peculiar language of the deed, whether Harris and wife held an estate by entirety, while in this there is no doubt on that point. In that case the wife joined with her husband in making the mortgage, while in the case at bar the husband alone made the mortgage. When that case was decided, in 1836, the common law with all of its rigor and strictness prevailed in reference to the power of the husband over the property of his wife, while in this State the common law has been modified by statute, to what extent will be considered hereafter. There can be no doubt that the mortgage of Harris and wife conveyed whatever inter-

est they had in the property. Such a mortgage would be valid in this State of an estate held by entirety, for the reason that it was jointly made.

The case of *Jackson* v. *McConnell, supra,* was an action of ejectment. The plaintiff claimed under a demise from John S. Suffern. The defence was that the property had been conveyed to Suffern and his wife, and that a separate demise from the husband would sustain the action. The court, after speaking of the nature of an estate by entirety, say: "Various legal consequences arising from such a peculiar estate have also been deduced by the cases. Neither the husband nor wife can, in their own right, alien any part without the concurrence of the other. *Jackson* v. *Stevens,* 16 Johns. 110, per SPENCER, J.; *Doe* v. *Howland,* 8 Cowen, 277, per SAVAGE, C. J.; and see 16 Johns. 302. The husband's creditors cannot take his interest in execution, *Rogers* v. *Grider,* 1 Dana, 242 ; *Roanes* v. *Archer,* 4 Leigh, 550, though it is certainly inferrible from *Barber* v. *Harris,* 15 Wend. 615, that his right *jure uxoris* might be thus appropriated. *Litchfield* v. *Cudworth,* 15 Pick. 23 ; *Stoebler* v. *Knerr,* 5 Watts, 181 ; *Brown* v. *Gale,* 5 N. H. 416; *Schermerhorn* v. *Miller,* 2 Cowen, 439. That case holds that the husband alone may give a mortgage of such interest. Why, then, can he not enter or give a lease ? "

The decision in the above case is a very remarkable legal document. It declares that neither the husband nor the wife can, without the concurrence of the other, alien any part of the estate, and that the husband's creditors cannot take his interest in execution; though it is inferrible from *Barber* v. *Harris* that such might be done. It is there stated that it was decided in *Schermerhorn* v. *Miller,* 2 Cowen, 439, that the husband alone might mortgage such interest. The question in the case is then disposed of by the inquiry, "why, then, may he not enter or give a lease ? " We have already shown that in the case of *Barber* v. *Harris,* the mortgage was executed by husband and wife, and that all that was said about the right of the husband to mortgage

his life estate was *obiter dicta*, and did not have the force and weight of a decision. We have taken the trouble to examine the other cases referred to, and find that none of them sustain the doctrine enunciated.

The question involved and decided in *Litchfield* v. *Cudworth, supra*, was this: John Cudworth owned certain real estate, which he conveyed to his son, John Cudworth, Jun., and took back a mortgage to secure the support of himself and wife. The son having survived the father died, leaving the mother alive, besides children of his own. Upon the death of John Cudworth, Jun., the estate descended to his children. The question was, whether the children took the estate subject to the mortgage aforesaid, and whether it was liable to pay his debts, if his personal property proved insufficient for that purpose. The court very properly held that the children of John Cudworth, Jun., took the estate subject to the mortgage. There was no question in reference to an estate by entirety raised or decided.

It was held in *Stoebler* v. *Knerr, supra*, that "an estate conveyed to a husband, for the joint benefit of himself and wife, without words limiting a trust for the separate use of the wife, but excluding the husband from power to sell, may be sold under execution as the estate of the husband." The court say: "The intent of the donor was to give the estate jointly to his daughter and her husband in special tail; but there are no words to limit a trust for the separate use of the daughter; on the contrary, the husband is expressly authorized to hold for their joint benefit. The object was doubtless to provide for the daughter and her issue; but there are no words restrictive of marital rights. The clause restrictive of the husband's right to sell, has respect to voluntary alienation, and not to alienation by process of law."

The point decided in *Brown* v. *Gale, supra*, was, that "where a husband and wife are seized in her right of a remainder in fee in lands, the husband has an interest in the land, upon which an execution, against him alone, may be extended." The court held that when a husband and wife

were seized in her right of a remainder, in fee, the hus-
band, by virtue of his marital rights, had an interest in the
estate, which might be sold; as in that state a possibility
coupled with some present interest was liable to sale upon
execution.

The learned judge who delivered the opinion in the above
case certainly did not read the case of *Schermerhorn* v. *Miller,*
*supra,* for he speaks of it as a case where the court had
decided that the husband alone might mortgage an estate by
entirety. The real case was this: Schermerhorn, Clute, and
Mrs. Miller were seized as tenants in common of a certain
house and lot. Miller had issue by his wife, born alive. By
the marriage and birth of the child, Miller became tenant by
the curtesy *initiate.* His interest as such tenant was sold upon
execution. The court held that such interest was subject to
sale upon execution for his debts. As between Mrs. Miller
and the other owners, they were tenants in common, but as
between her and her husband, she was the owner in fee,
while he was tenant by the curtesy *initiate,* and it was his
interest as such tenant that was sold. There was not at
common law any tenancy by the curtesy in estates held by
entirety, and such tenancy is abolished in this State.

Thus it will be seen that all the cases upon which the
decision was based in *Jackson* v. *McConnell, supra,* are clearly
distinguishable from the case under consideration, as in none
of them were involved the rights of tenants by the entirety;
and neither they nor the decisions based upon them can be
regarded as authority by this court.

The case of *Bennett* v. *Child, supra,* was a proceeding to
enjoin the sheriff from making a deed to a certain tract of
land and to set aside the sale. The court found the follow-
ing facts:

That on the 1st of May, 1854, the plaintiffs, as husband
and wife, purchased the premises jointly, and took a deed
running to them both, and entered jointly into possession,
and continued jointly to occupy the premises as a home-
stead until that time; that nearly one-half of the purchase-

money was paid out of the separate estate of said Elmira; that the premises were sold by the sheriff, May 23d, 1860, to Child, Gould & Co., on an execution in their favor against John G. Bennett, for a debt contracted subsequently to such joint purchase and occupancy; and that previous to the sale, plaintiff duly notified the sheriff of the condition of the title to said premises. Upon these facts, the court held that the plaintiffs owned the premises as tenants by entirety; that the same was not chargeable with the debts of the husband, and set aside the sale and enjoined further proceedings.

The Supreme Court reversed the judgment of the court below, and held that the premises were properly sold upon said execution. The court say: "All the authorities agree that the husband during coverture cannot alienate the whole or any part of the estate, so as to give title after his death, as against the wife surviving him. But we do not understand that at common law he could not convey his life interest or estate therein."

The court, after referring to and quoting from the opinion in the case of *Barber* v. *Harris, supra,* proceed to say: "If the husband can convey or mortgage the land, and give to his grantee the use of the entire real estate during his life, we see no good reason why his creditors cannot seize it on execution; for it is clear that under our laws a life estate is subject to be seized and sold on execution. If this interest of the husband is not subject to execution, then he has the right to use, sell, convey, or mortgage real estate of great value, over and above his homestead, which his creditors cannot reach."

It will be observed that the right of creditors to sell the interest of the husband was based upon the supposed right of the husband to convey or mortgage his interest without the concurrence of the wife, and that such right to convey or mortgage was settled in the case of *Barber* v. *Harris, supra.* The decision is based upon false premises. It assumes that the husband has an interest of his own, distinct from that of the wife, which he alone has the right to alien-

ate or mortgage. In our judgment, a decision that has no higher or weightier authority to support it than the case of *Barber* v. *Harris* is entitled to but little weight or consideration. Besides, the court is mistaken as to the consequences that would result from holding that the husband could neither convey nor encumber, without the concurrence of his wife, an estate by entirety, or that the same could not be sold upon execution to satisfy the debts of the husband. It is assumed that it would enable a man to fraudulently conceal and cover up his lands so that the same could not be reached by his creditors. Such would not be the result. The husband could not, by taking a conveyance to himself and wife, defraud his creditors any more than he could effect the same object by taking a conveyance directly to his wife, or to some third person. If an estate by entirety is created to cheat, hinder, or delay creditors, and the husband has not other property subject to sale to pay his debts, the conveyance can be declared fraudulent and set aside in the same manner that any other fraudulent conveyance would be, and such a proceeding would be governed by the same principles of law and rules of evidence as any other proceeding to set aside as fraudulent any other conveyance. The authorities go to the extent of holding that while an estate by entirety exists, it cannot be seized and sold for the debts of the husband, but such estate may be attacked and destroyed on account of fraud.

The case of *Ames* v. *Norman*, 4 Sneed, 683, involved the right of creditors to have the interest of the husband in an estate by entirety seized and sold upon execution, in satisfaction of the debts of the husband. The court lays down the following proposition of law, which meets with our entire approval, namely: "As a consequence peculiar to this tenancy, it is laid down in the books that, during their joint lives, neither can alien the estate thus held without the consent and concurrence of the other, and the survivor takes the whole estate; neither can sever the joint interest; the whole estate belongs to the wife as well as to the husband,

and the husband cannot by his own conveyance, the wife not joining therein, divest her estate. 2 Greenleaf's Cruise, 365; 2 Bl. Com. 182; 2 Kent Com. 132; 4 Kent, 363."

The court then proceeded to lay down a proposition of law in direct and irreconcilable conflict with the foregoing. The court say: "From the peculiarity of this tenancy, the unity and indivisibility of the seizin, there is some confusion in the cases respecting the power of the husband alone to make any conveyance or disposition of the land thus held during their joint lives, and also as to the right of creditors of the husband to subject the same to the satisfaction of the husband's debts. But upon examination of the authorities, it appears to be settled that during their joint lives the husband may dispose of the estate. He may lease or mortgage it, or it may be seized and sold upon execution for his debts."

In one paragraph of this learned opinion we are told that during their joint lives, neither can alien the estate thus held without the consent and concurrence of the other, and the survivor takes the whole estate; neither can sever the joint estate; the whole belongs to the wife as well as to the husband, and the husband cannot, by his own conveyance, the wife not joining therein, divest her estate. In support of these sound principles, the court refers to Blackstone, Kent, Cruise, and Greenleaf, four of the most deservedly eminent law writers of England and America.

In the next paragraphs we are informed that there is some confusion in the cases respecting the power of the husband and the rights of creditors, but that upon examination of the authorities, it appears to be settled that during their joint lives the husband may dispose of the estate. He may lease, or mortgage it, or it may be seized and sold upon execution. We are unable to determine what authorities were examined, as no reference is made to any. If neither can alienate the estate, or any part thereof, or sever the joint estate, we do not see how the husband can dispose of the estate during their joint lives, or how he can lease it or mortgage it; or how it can be seized and sold upon execution for his debts,

if the whole estate belongs to the wife as well as to the husband.

All the authorities agree that there can be no partition of the estate, for the plain and manifest reason that neither has any separate interest. As between husband and wife there is but one owner, and that is neither the one nor the other, but both together. The estate belongs as well to the wife as to the husband. Then, how can the husband possess any interest separate from his wife, or how can he alienate or encumber the estate, when all the authorities agree that the wife can neither convey nor encumber such estate.  We are of the opinion that from the peculiar nature of this estate, and from the legal relation of the parties, there must be unity of estate, unity of possession, unity of control, and unity in conveying or encumbering it; and it necessarily and logically results that it cannot be seized and sold upon execution for the separate debts of either the husband or the wife. The estate is placed beyond the exclusive control of either of the parties, or the reach of creditors, unless it can be successfully attacked and set aside for fraud. Any other rule would create injustice and hardship. If the husband can dispose of the estate during their joint lives, the wife is deprived of the enjoyment without her consent. If the husband can, by his separate deed, make a valid mortgage of his interest in fee, then the purchaser upon foreclosure would acquire a fee simple title, which would defeat the right of survivorship. But suppose the husband cannot defeat the right of survivorship, and it is settled by all the authorities that he cannot, upon what principle can it be maintained, that he can by leasing or mortgaging his interest in the estate deprive his wife of the use and enjoyment of it during his life? The property belongs as much to the wife as to the husband, and she has just as clear, undoubted, and equitable a right to the use and enjoyment of the property during the existence of the marriage, as she has to succeed to the estate upon the death of her husband. The opposite doctrine is full of absurdities and gross injustice. If the doctrine contended for by the appellant is

correct, the husband may, without the consent and concurrence of his wife, lease the property to a stranger, and compel his wife and children to leave the comfortable home that belongs as much to her as to him, and compel them to live in some miserable hovel, while the husband spends his time in riotous living upon the rent derived from the joint estate. In such a case, the wife can have no relief except in the death of her husband. If the husband has a life estate separate and distinct from his wife, then he may mortgage such estate, or it may be seized and sold upon execution for his debts. In either event, the purchaser would acquire just the same interest that the husband had. The purchaser would be entitled to the possession during the life of the husband to the exclusion of the wife. The right of the wife to the joint enjoyment of the estate, during the marriage, is as valuable and sacred as the right of taking the entire estate by survivorship upon the death of her husband. The rights of the wife in the joint property are as sacred as those of the husband, and should be as firmly secured, guarded, and protected by the law as are his. There is an equity in equality, but there is gross iniquity and injustice in permitting the husband to deprive the wife of the use and enjoyment of an estate that does not belong exclusively to either, but to both, and which belongs as much to the wife as to the husband.

If we should hold that the husband, without the consent and concurrence of the wife, could convey or encumber the estate so as to deprive the wife of the use and enjoyment of it during his life, or to defeat the right of survivorship, or that he has some interest in the estate separate and distinct from his wife, which could be seized and sold upon execution for his debts, where the conveyance could not be set aside for fraud, this would be to utterly destroy the nature, quality, essence and incidents of an estate by entirety, and to defeat the plain and manifest intention of the legislature in providing that an estate by entireties might continue to exist between husband and wife.

During the constitutional convention of 1850, there was

Chandler, by Moore, Guardian, *v.* Cheney.

an able and exhaustive discussion of the rights of husband and wife. The convention very wisely left the whole question to the legislature. The legislature of 1851–2 assembled soon after the ratification of the constitution by the people. Many of the most influential and distinguished members of the convention were members of this legislature. Upon this body was imposed the delicate and arduous duty of revising the laws of the State, and making them conform to the provisions of the new constitution. Estates at common law had been divided and subdivided, until it was almost impossible for even the best of lawyers to understand the laws. Many of the rules were arbitrary and artificial, and unsuited to our system of government. By the common law, the husband had the absolute control over the property, real and personal, of the wife. That legislature abolished tenancies by curtesy in the husband and dower in the wife, and gave the wife one-third in fee, subject to certain limitations and restrictions. It secured to the wife her separate estate in her lands, and deprived the husband of the power of alienating or encumbering it, without her consent and concurrence. It secured to the wife the rents and profits of her separate estate, and declared that it should not be seized and sold upon execution for the debts of the husband. It abolished estates tail. It modified the common law in reference to joint tenancies, by providing that a joint deed to two or more should be construed to be tenancies in common, unless the intention to create a joint tenancy was expressly declared in the deed, or was made manifestly to appear from the tenor of the instrument. But it did not abolish estates by entireties as between husband and wife, but provided that when a joint deed was made to husband and wife, they should hold by entireties, and not as tenants in common or as joint tenants. The legislature evidently had some purpose in continuing this peculiar estate. What was the purpose? In ascertaining the legislative intention we are required to take into consideration the entire scope of legislation during that session. There was a strong

and determined purpose manifested to guard and protect the rights of married women. It is quite obvious to us, that the evident and manifest intention of the legislature in providing for the continuance of estates by entireties, as between husband and wife, when joint tenancies between persons who were not married had been virtually abolished, was to provide a mode in which a safe and suitable provision could be made for married women. Various expedients had been resorted to, to effect the same object. Husbands and fathers who desired to provide for sons and daughters had made and caused to be made deeds to trustees in trust for married women, but the more common practice was to make the deeds directly to the wife. Neither of these plans operated well. There was too much machinery and complication about the first. The second was attended with baneful and disastrous consequences. It disturbed the peace and harmony of families. It was an element of strife, contention, and discord. It placed too much power in the wife, and gave her too much control over domestic matters. It destroyed the independence of the husband by making him subordinate to the wife. To remedy this condition of things the legislature continued this estate. It is true that it had existed at common law, but was not very clearly defined or understood, and as it had been regarded as a joint tenancy, and as the virtual abolition of this tenancy would have destroyed estates by entireties, unless expressly saved by the statute, it was so saved and perpetuated. The manifest intention of the legislature was to provide by positive enactment a mode in which a homestead could be created and preserved. It should be the earnest desire of every husband and father to provide a home for his wife and children and a place of repose for himself in his declining years. The power, strength, and prosperity of a state depend upon the peace, happiness, and prosperity of the families of the state. An estate by entireties is better calculated to produce an unity of feeling and interest than any other. It is a bond of union between husband and wife. The homestead does

not belong to one to the exclusion of the other. There is no feeling of dependence on the part of the husband, as when the title is vested in the wife, and yet it makes each dependent on the other and produces a feeling of conciliation and forbearance. It makes the husband, the wife, and the children feel a joint and common interest in improving, adorning, and preserving their common home. It will inculcate habits of industry and economy. It is the common home of all the household during the joint lives of the husband and wife; and upon the death of either, the survivor takes the whole estate, and thus it continues to be the homestead. But when the title is vested exclusively in the wife, upon her death it will descend, one-third to the husband, and two-thirds to the children, and thus the estate is divided and often wasted, and the home is broken up.

We have examined and duly considered many authorities besides those from which we quoted, a reference to which is here made: *Jackson* v. *Stevens*, 16 Johns. 110; *Doe* v. *Parratt*, 5 T. R. 652; *Rogers* v. *Benson*, 5 Johns. Ch. 431; *Doe* v. *Howland*, 8 Cowen, 277; *Green* v. *King*, 2 W. Black. 121; *Den* v. *Hardenbergh*, 5 Halst. N. J. 42; *Shaw* v. *Hearsey*, 5 Mass. 521; *Doe* v. *Garrison*, 1 Dana, 35; *Taul* v. *Campbell*, 7 Yerg. 319; *Greenlaw* v. *Greenlaw*, 13 Maine, 182; *Dickinson* v. *Codwise*, 1 Sandf. Ch. 214; *Thornton* v. *Thornton*, 3 Rand. 179; *Rogers* v. *Grider*, 1 Dana, 242.

We have thus far considered this case without reference to our statute in regard to husband and wife, and the power of the husband over the lands of the wife. The statute enacts that "no lands of any married woman, shall be liable for the debts of the husband; but such lands and the profits therefrom, shall be her separate property, as fully as if she was unmarried; provided, that such wife shall have no power to incumber or convey such lands, except by deed, in which her husband shall join." And, again, "The separate deed of the husband, shall convey no interest in the wife's land." 1 G. & H. 374. It was held by this court, in *Davis* v.

*Clark*, 26 Ind. 424, that, "under these provisions of the statute" (the ones above quoted) "it is evident that the husband does not, by virtue of the marriage, acquire any legal interest or estate in the lands of the wife, but the same, and the profits thereof, remain her separate property. He cannot, by his separate deed, convey any interest in them, and they are in no wise liable for his debts."

The ruling in the above case is directly in point in the case under consideration, as in that case the property in dispute was held by husband and wife as tenants by entirety, and the question involved was, whether it could be seized and sold upon execution for the debts of the husband, and it was held that it could not be so sold.

The ruling in the above case was followed in *Arnold* v. *Arnold*, 30 Ind. 305, where the court say: "In *Davis* v. *Clark*, 26 Ind. 424, this question was settled in favor of the ruling of the court below. It was there held, that at common law, if an estate is granted, as in this case, to a man and his wife, they are neither properly joint tenants nor tenants in common; for husband and wife being considered one person in law, they cannot take the estate by moieties. Both are seized of the entirety, *per tout*, and not *per my*. Neither can dispose of any part of the estate without the assent of the other; but the whole must remain to the survivor."

The above decisions were adhered to by this court in *Simpson* v. *Pearson*, 31 Ind. 1.

It is maintained, with great ability and earnestness, by the counsel for the appellant, that the sections of the statute upon which the ruling in *Davis* v. *Clark, supra,* was made to depend have exclusive reference to the wife's separate estate, and can have no application to an estate by entirety. We have given that question careful consideration, and while we are of the opinion that an estate by entirety does not come within the strict letter of the statute, yet it comes within the spirit of it. When we take into consideration the various acts that were passed at the session of 1851–2 in

reference to the marriage relation, we think that it is quite manifest that the legislature intended to deprive the husband of the control over the property of the wife, which he had enjoyed by the common law. It is well settled by all the authorities, that an estate, by entirety belongs as well to the wife as to the husband. It is true that the wife does not hold it as her separate property, but jointly with her husband. But if the doctrines contended for by the appellant are correct, then the wife may be deprived of the joint enjoyment of the property during their joint lives, and her right of survivorship may be destroyed. For if the husband can, without the consent and concurrence of the wife, convey and encumber the estate, she may be deprived of her right of joint enjoyment; and if the property thus held can be seized and sold upon execution, the right of survivorship may be defeated. It is quite clear to us that when the legislature provided that husband and wife should not be tenants in common, but by entireties, the intention was to guard and protect the rights of the wife by depriving the husband of the power to alien or encumber the same without her consent and concurrence, or to charge the same with his debts, or to exercise sole control, or to enjoy exclusive possession thereof.

We are asked to overrule the case of *Davis* v. *Clark*, *supra*, and the subsequent cases that adhere to the ruling in that case. This we cannot do for several reasons. In the first place, we are of the opinion that the above cases were decided rightly, on general principles, without reference to our statute. In the next place, we would have to overrule the case of *Bevins* v. *Cline's Adm'r*, *supra*, and all the subsequent cases that follow and adhere to the ruling in that case. The case of *Bevins* v. *Cline's Adm'r* was decided in 1863, and that of *Davis* v. *Clark*, in 1866. These decisions have become a rule of property. So strong and so uniform a train of decisions leaves but little room for the court to exercise their judgment on the reasons on which they were founded. A very careful and accurate elementary writer says: " When a de-

cision involving the title to real estate, and the construction of a statute, has been announced. by a court of last resort, and has become a rule of property, it will be overruled only for the most cogent reasons, and upon the strongest conviction of its incorrectness." Ram Leg. Judgm. 237.

We are of the opinion that no error was committed by the court below.

The judgment is affirmed, with costs.

*B. F. Davis* and *B. F. Love,* for appellant.

*E. H. Davis* and *C. Wright,* for appellee.