No. 9153.

### MORRISON v. SEYBOLD ET AL.

TAXES.—*Sale of Real Estate Held by Entireties for Taxes on Personalty of Husband.—Lien.—Husband and Wife.*—Lands held by husband and wife as tenants of the entirety are not subject to a lien for taxes upon the husband's personal estate, and a purchaser of the lands for such taxes acquires no lien.

From the Clay Circuit Court.

*G. A. Knight, C. H. Knight* and *J. T. Lecklider,* for appellant.
*W. W. Carter* and *S. D. Coffey,* for appellees.

NIBLACK, J.—Action by Dempsey Seybold, as the administrator, and a considerable number of other persons, as the children and heirs at law of Stewart Webster, deceased, against William H. Morrison, to set aside the sale for taxes of a tract of land in Clay county, and to have the amount of taxes which were lawfully chargeable against such land ascertained and adjusted.    Issue and trial by the court.

The court, at the request of the defendant, made a special finding of the facts, which may be stated as follows:

*First.* That the land described in the complaint was, on the 12th day of April, 1873, owned by the above named Stewart Webster.

*Second.* That on that day the said Stewart Webster and his wife conveyed the land in controversy to John S. Hart and Elizabeth Hart, who were then, and have ever since continued to be, husband and wife.

*Third.* That at the time Webster and wife conveyed the land to Hart and wife, as above stated, Hart and wife executed a mortgage to Webster on the land to secure the pay-

ment of the sum of $5,800, being a part of the purchase-money on which time was given for payment.

*Fourth.* That Stewart Webster died intestate on the 18th day of November, 1873; that the plaintiff Seybold was soon thereafter appointed administrator of his estate, and still continues to be such administrator, and that the remaining plaintiffs are the heirs at law of the said Webster.

*Fifth.* That Seybold, as such administrator, by proper proceedings in the Clay Circuit Court, obtained a decree of foreclosure of the mortgage executed by Hart and wife to Webster on the 7th day of November, 1877, and afterwards purchased the mortgaged land at a sheriff's sale under that decree, and, on the 29th day of January, 1879, received a sheriff's deed conveying the land to him in trust for the heirs at law of the said Webster.

*Sixth.* That the land was taxed to John S. Hart and Elizabeth Hart for the years 1874, 1875, 1876, 1877 and 1878, and that during those years they became and were delinquent in the payment of the taxes assessed against them.

*Seventh.* That in 1874 John S. Hart was the owner of personal property of the assessed value of $875, the taxes upon which were charged to and taxed against the land, upon the tax-duplicate of Clay county for that year; that in 1875 the said John S. Hart was the owner of personal property assessed at $873, and of one dog in addition, and was liable to pay a poll-tax, upon all of which the taxes were for that year, as in the year preceding, charged against the land; that in 1876 the said John S. Hart owned personal property of the estimated value of $1,584, the taxes upon which were charged against the land as during the two preceding years; that in 1877 the said John S. Hart owned personal property of the listed value of $450, upon which taxes were likewise charged against the land on the tax-duplicate of Clay county for that year.

*Eighth.* That the treasurer of Clay county, on the 10th day of November, 1879, sold the land to the defendant William

H. Morrison, at private sale, for $217.28, that sum including, and being the full amount of, the taxes charged against the land on account of the personal property, dog and poll-tax of the said John S. Hart, as herein above stated, with the penalty and interest due thereon, as well as the taxes, penalty and interest which had accrued against the land alone, and issued to the said Morrison a certificate of the sale of the land to him.

*Ninth.* That Elizabeth Hart had no interest in the personal property, the taxes upon which were charged against the land.

*Tenth.* That the sum of $69.37 was the amount due on the personal property, dog and poll-tax of the said John S. Hart at the time of the tax sale, on the 10th day of November, 1879, and that only the sum of $147.91 was due for taxes which had accrued against the land up to that time.

*Eleventh.* That before the land was sold for taxes Seybold, as the administrator of Webster, offered and tendered to the treasurer of Clay county, the amount of taxes, including penalty and interest, which had accumulated against the land alone, but said treasurer refused to accept that amount of taxes, unless he, the said Seybold, would also pay the taxes which had been assessed upon the personal property, including the dog belonging to, and the poll-tax charged against, the said John S. Hart.

Upon the facts thus found the court came to the following conclusions:

*First.* That the land mentioned in the complaint was held by Hart and wife as tenants by entirety during the time in which the delinquent taxes for which it was sold accrued.

*Second.* That said land was not, when sold to the defendant, liable for the personal property tax, dog-tax and poll-tax assessed against John S. Hart.

*Third.* That the sale of the land for these last named taxes was illegal. To which conclusions, as conclusions of law, the defendant, at the time they were announced, excepted.

The court thereupon ordered, adjudged and decreed that

the sale of the land to the defendant for taxes, and the certificate of such sale issued by the treasurer of Clay county, be set aside, and that the title of the plaintiffs to the land be quieted against all claims of the defendant except said sum of $147.91 which was declared to be a lien on the land in favor of the defendant, and for the payment of which thirty days time was given. It was further ordered that in case of failure to pay the sum of money so adjudged to be due to the defendant within the time limited, the land should be sold, as lands are sold on execution, to discharge such lien and interest thereon. The plaintiffs also had judgment for costs.

Section 169 of the act of December 21st, 1872, concerning the assessment and collection of taxes, which was in force when the sale for taxes contested in this case was made, declared that "The lien of the State for all taxes for State, county, school, road, or township purposes, shall attach on all real estate on the first day of April, annually, and such lien shall be perpetual for all taxes due from the owner thereof," including interest and penalties chargeable thereon.

Section 170 of the same act further declared that "All the property, both real and personal, situated in any county, shall be liable for the payment of all taxes, penalties, interest and costs charged to the owner thereof in such county."

When taken in connection with other provisions of the same act, we construe these sections to mean that when a taxpayer in any given county is the owner of real estate, as well as personal property, taxable in that county, the real estate may, and by proper proceedings can, be held liable for the taxes chargeable against the personal estate, and that the personal property will be held liable for the taxes assessed against the real estate, the distinguishing difference being that the personal property is primarily liable for all taxes lawfully due from the owner in the county. But, in the absence of any statute authorizing such a construction, this liability of one class of property for taxes assessed upon another class can not be extended to cases of property belonging respectively

to different owners, or in which the respective classes of property are held by different titles. . There was nothing in force contemporaneously with the sections set out in part as above, nor has there ever been since, so far as we are advised, making real estate liable, in any event, for taxes chargeable against personal property not belonging to the owner or owners, as. the case may be, of such real estate.

Washburn on Real Property, after referring to the nature of estates held as tenants in common, as well as by joint-tenants continues. "A still more peculiar joint estate is that which belongs to a husband and wife, where the same is conveyed to them as such. If a man and woman, tenants in common, marry, they still continue to hold in common. But if the estate is conveyed to them originally as husband and wife, they are neither tenants in common nor properly joint-tenants, though having the right of survivorship, but are what. are called tenants by entirety. While such estates have, like a joint-tenancy, the quality of survivorship, they differ from that in this essential respect, that neither can convey his or her interest so as to affect the right of survivorship in the other. They are not seized, in the eye of the law, of moieties, but of entireties.

"In such cases, the survivor does not take as a new acquisition, but under the original limitation, his estate being simply freed from participation by the other; so that if, for instance, the wife survives and then dies, her heirs would take to the exclusion of the heirs of the husband. Nor can partition be made of the estate." 1 Washb. Real Prop. (4th ed.) 672.

It has been held that under sections 2922 and 2923, R. S. 1881, a conveyance to husband and wife jointly by names, without referring to their marital relations, constitutes them tenants by entirety. *Chandler* v. *Cheney,* 37 Ind. 391.

It was further held in regard to tenancies by entireties, in the case just cited, that "neither can sever the joint estate by his own act, as he can in case of an ordinary joint-tenancy, but both must unite in the deed to effect a conveyance

of any estate in any part of the whole. Nor, it would seem,. could the separate interest of either be sold on execution.. Indeed, there is no separate interest." That case has been followed and approved by the cases of *Jones* v. *Chandler,* 40. Ind. 588 ; *Hulett* v. *Inlow,* 57 Ind. 412 (26 Am. R. 64) ; *Patton.* v. *Rankin,* 68 Ind. 245 (34 Am. R. 254).

The only conclusion we have been able to reach is, that. the land in controversy did not become liable for the payment. of the taxes assessed upon the personal property of John S. Hart, referred to in the special finding of the court, and that consequently the sale of the land for taxes to appellant was. unlawful and invalid.

It follows that the State acquired no lien against the land for the taxes upon the personal property, and that there was,. therefore, no lien upon the land on account of such taxes, to which the appellant could have been subrogated.

An objection has been urged to the sufficiency of the com-- plaint, but, as a complaint to quiet title, it impresses us as. having been substantially sufficient. 2 R. S. 1876, p. 254,. section 611.

The judgment is affirmed, with costs.

Filed Dec. 21, 1883.