Filed Feb. 15, 1894.

------

No. 16,640.

DYER ET AL. *v.* ELDRIDGE ET AL.

REAL ESTATE.—*Adverse Possession.*—*Presumption.*—*Color of Title.*— The actual possession and improvement of land, as owners are accustomed to possess and improve their lands, without any payment of rent, or recognition of title in another, or disavowal of a title in himself, will, in the absence of other evidence, be sufficient to raise the presumption that such entry and holding was as absolute owner, and such possession for twenty years will be effectual to confer title; and it is not essential that such possession should be under color of title.

SAME.—*Line Fence.*—*Acquiesced in for Twenty Years.*—*Becomes Binding.*—Where the location of a division boundary fence is acquiesced in and acted upon, and the premises are improved up to the line by each, for twenty years, such fence becomes binding as the true line.

QUIETING TITLE.—*Real Estate.*—*Agreement to Survey.*—*Evidence.*— *Boundary Line.*—*Estate by Entireties.*—In an action to quiet title to land, parol evidence of an agreement signed by one of the plaintiffs for the survey of some of the land in controversy, is not admissible in evidence, when the survey was never completed; and the land being held by entireties, neither the husband nor wife had the power, by any contract, to change the lines of the farm.

From the White Circuit Court.

*M. M. Sill*, for appellants.

*J. H. Gould* and *G. R. Eldridge*, for appellees.

DAILEY, J.—On the 23d day of September, 1891, the appellees, Eldridge and Eldridge, filed their complaint in the White Circuit Court, against the appellants and appellee Arthur J. Brackney, to quiet their title to a strip of land in the northwest quarter of section 19, in township 25 north, range 3 west, in said county, particularly describing said strip in the complaint by metes and bounds.

To this complaint the defendants filed an answer in general denial. The cause was tried at the November term, 1891, of said court, and a judgment rendered for the plaintiffs.

A new trial as of right under the statute was obtained, and at the April term, 1892, of the White Circuit Court, the case was again tried before the Hon. John M. La Rue, a special judge, which also resulted in a finding and judgment for the plaintiffs.

The defendants separately and jointly moved for a new trial, and filed written reasons therefor. This motion was overruled and exception taken. Thereupon the defendants moved in arrest of judgment, which was overruled, and excepted to, and from the final judgment this appeal is prosecuted.

The appellants have abandoned all their assignments of error, except the second and fourth.

Under the second specification, it is contended that the judgment should be reversed because it is contrary to the evidence.

Appellees Eldridge proved a paper title to the southwest quarter of said section 19. The contest was as to their northern boundary. For more than a third of a century the southwest quarter was occupied continuously by the appellees herein and their grantors direct and remote, under fence. By recent survey, it was ascertained that the north line of said quarter was not where the

fence was and is, but some rods south thereof. The appellees claim that their lands on the north are bounded by the old fence, regardless of where the quarter section line may really be. Appellants concede that this fence has been standing for more than twenty years. It only remains for appellees to show that they and their grantors have been in possession and occupied the lands, as owners, to the fence for a period exceeding twenty years.

This the record shows: Allen M. Eldridge, testified that the old fence marked the northern boundary of the farm; that the farm was cultivated, pastured and enclosed up to the fence, and there never was any controversy about it.

William Woods testified, that his father had owned the land, buying it perhaps thirty years before; that he remembered the old fence on the north line of the farm; that it never was changed; that his father and family always occupied and farmed the land up to the fence, also using the groves for pasture land; that afterwards one Matthews so occupied it.

Thomas Sleeth testified, that he had known the farm forty years; that the fence was there when he first became acquainted with the farm in 1853 or 1854, and was an old fence then; that all the owners and occupants of the farm occupied the land up to the fence, farming it.

Arthur J. Brackney testified, that he had lived on the same section for thirty-five or forty years; that the rail fence on the north of appellees' farm marked his south line; that the fence had been there ever since he occupied the land immediately north of it; that he lived on and occupied the land down to the fence; that the occupants of appellees' farm occupied the land in controversy as part of their farm all that time up to the fence, ever since he lived there.

James McLean testified, that he had known the fence

forty years; that he thought the various owners farmed the land up to the fence, and supposed the fence was on the line until the present trouble arose.

William Woods, recalled, again testified as to the occupancy of the farm to the fence, under claim of title, by James K. Woods (grantor to appellees), James Matthews, and Alfred Woods, witness's father; that he had seen stock in there almost every year from the time he could remember.

Robert Lawrie, surveyor, testified, that the farms indicated that the fence was the line; that it was the division between the farms; that the disputed land was pastured.

As shown by the record, it is clear that for nearly a half century appellees Eldridge and their grantors, direct and remote, have openly, visibly, notoriously and adversely occupied and farmed the lands in controversy south of the fence.

Appellants' counsel insist that it is the rule of law that plaintiffs must have had either color of title, or that they and their grantors must have claimed title for more than twenty years. In this counsel are, in part, mistaken. No color of title is essential. It is not, and never has been, the law of this State that there must be color of title before an adverse possession will ripen into a title. *Collett* v. *Board, etc.,* 119 Ind. 27; *Riggs* v. *Riley,* 113 Ind. 208; *Law* v. *Smith,* 4 Ind. 56; *O'Donahue* v. *Creager,* 117 Ind. 372; *Bell* v. *Longworth,* 6 Ind. 273.

"Adverse user is such an use of the property as the owner himself would exercise, disregarding the claims of others entirely, asking permission from no one, and using the property under a claim of right. Such a use of the property continued without interruption for a period

of twenty years or more, is equivalent to a grant." *Nowlin* v. *Whipple*, 120 Ind. 596, 598.

Actual possession of lands under a claim of title is sufficient notice of such claim to put others upon inquiry as to the extent and nature of the claim. *Meni* v. *Rathbone*, 21 Ind. 454; *Jeffersonville, etc., R. R. Co.* v. *Oyler*, 60 Ind. 383; *Tuttle* v. *Churchman*, 74 Ind. 311; *Jeffersonville, etc., R. R. Co.* v. *Oyler*, 82 Ind. 394; *Barnes* v. *Union School Tp.*, 91 Ind. 301; *Campbell* v. *Indianapolis, etc., R. R. Co.*, 110 Ind. 490.

"In this country and in England the doctrine seems quite firmly established, that open, notorious, unequivocal and exclusive possession of real estate, under an apparent claim of ownership, is notice to the world of whatever claim the possessor asserts, whether such claim is legal or equitable in its nature." 4 Cent. L. J., 122.

"If knowledge is brought home to the purchaser that a third person is in the possession and apparent ownership of the land, it ought, under ordinary circumstances, to be deemed sufficient information to the second purchaser that the possessor is the owner of the fee." *Vaughn* v. *Tracy*, 22 Mo. 415 (422).

"When title is in controversy, it is to be shown by legal proof, and continued disseizin for twenty years is as effectual for that purpose as a deed duly executed. The title is created by the existence of the facts, and not by the exhibition of them in evidence." *Inhabitants of School District* v. *Benson*, 31 Me. 381 (385).

Such title is so perfect that, according to Lord Chancellor Sudgen, a court of equity will compel specific performance of the contract of purchase. *Scott* v. *Nixon*, 3 Drury & Warren, 388.

That is, the title is transferred from the person who lost it to the person gaining it by the disseizin. *Irish Soc.* v. *Richards*, 4 Irish Eq. Rep. 179.

It (disseizin) operates, says Baron Parke, as "a parliamentary conveyance of the land to the person in possession." *Jukes* v. *Sumner*, 14 M. & W. 38 (41).

Exercising that dominion over the thing used, taking that use and profit it is capable of yielding in its present condition, such acts being so repeated as to show that they are done in the character of owner, and not of an occasional trespasser, constitute adverse possession. *Baum* v. *Currituck, etc., Club*, 2 S. E. Rep. 673 (675 and 676).

Actual occupancy, by residence, cultivation or inclosure, as in this case, is not required to constitute adverse possession. *Cooper* v. *Morris*, 7 Atl. Rep. 427.

The correct doctrine is declared in *La Frombois* v. *Jackson*, 8 Cowen, 588 (603), as follows: "The actual possession and improvement of the premises, as owners are accustomed to possess and improve their estate, without any payment of rent, or recognition of a title in another, or disavowal of a title in himself, will, in the absence of all other evidence, be sufficient to raise a presumption of his entry and holding as absolute owner; and unless rebutted by other evidence, will establish the fact of claim of title."

The court further said: "Every possession, then, is adverse, and entitled to the peaceful and benignant operation and protecting safeguard of the statute, which is not in subservience to the title of another, either by a direct acknowledgment of some kind, or an open or tacit disavowal of right on the part of the occupant; and it is in the latter case only, that the law adjudges the possession of one to the benefit of another."

In the case of *Roots* v. *Beck*, 109 Ind. 472, it is decided that an open, notorious, exclusive, uninterrupted, and adverse possession, continued for the period of twenty years, is effectual to confer a title on the person so oc-

cupying, and it is not essential that such possession should have been under color of title.

In that case, it is said: "Some of the apparent confusion in the cases, which has been remarked upon, grows out of the difference between that peculiar hostile possession which formerly rendered conveyances executed by parties out of possession void, as respects persons occupying the land adversely, and that undisturbed possession which by the efflux of time, will ripen into a title. The former required possession under color of title. The latter might originate without claim or color of title. * * * Any adverse possession, the effect of which is to oust the true owner, and give to him a right of action, sets the statute of limitations in motion. When the bar of the statute becomes complete, however destitute of the color of title such occupancy may have been, to the extent that it was actual, visible and continuous, a title by prescription arises in the adverse occupant. This title is in all respects equal to a conveyance in fee. The only distinction which can be recognized between title acquired under the statute of limitations by adverse occupancy, under claim and color of title, and without such claim or color, is, that in the latter case title will only be coextensive with actual, visible, and continued occupancy, while in the former color of title may by construction embrace lands only part of which was thus actually occupied." *State* v. *Portsmouth Savings Bank*, 106 Ind. 435 (461).

The following cases also support the proposition that exclusive, open, undisputed, and continuous possession, enjoyment, and use of lands confer title on the occupant. *Bales* v. *Pidgeon*, 129 Ind. 548 (549); *Mc Whorter* v. *Heltzell*, 124 Ind. 129 (131); *Bowen* v. *Preston*, 48 Ind. 367 (374); 3 L. Cases, Am. L. R. P., 125, 126.

The case of *Brown* v. *Anderson*, 90 Ind. 93 (95), is directly

in point, and quite similar to the case at bar. The evidence showed that there had been, for a long time, some dispute as to the location of a division line. That for more than twenty years there had been standing a partition fence, and that the parties and those under whom they claimed title had respectively occupied and cultivated the land during the existence of said fence, on each side and up to the same as their own. The court, under such facts, held that the continuous occupancy and use of the land for twenty years, to the fence, which really was not the true boundary line, transferred the title to the occupant.

It will be remembered that Brackney testified that the fence in question marked the division line between his land and the farm of the appellees Eldridge, and that the land on each side had been used and occupied up to the fence.

The law is that the location of a division boundary fence, acquiesced in and acted upon, and the premises improved up to the line by each, for twenty years, becomes binding as the true line. *Richwine* v. *Presbyterian Church, etc.*, 135 Ind. 80; *Wingler* v. *Simpson*, 93 Ind. 203, and cases there cited.

It is, indeed, axiomatic that acts are stronger talismans of intentions and beliefs than are words, and to them are we to look in settling the question of title. Guided by the evidence in this case, as to the acts performed, and applying the law thereto, the court could not have rendered a different judgment. But it is claimed that the court erred in excluding parol testimony of the contents of an agreement signed by the appellee Allen M. Eldridge, and others, for the survey of the lands in controversy.

Several reasons exist why this evidence was properly excluded. In the first place, it appears that the survey

contemplated by the instrument was never made; no record of it was made, because it never was completed. Not being a complete and proper survey, it could bind no one.   *Brown* v. *Anderson, supra.*

It is urged that by signing such an agreement Allen M. Eldridge, in law, established the north line of appellees' (Eldridge and Eldridge) farm at the line to be ascertained by the survey.   In this we think counsel are mistaken; Allen M. Eldridge had no power to establish the line by agreement or otherwise.   These lands were a part of the farm owned by Allen M. and Mary M. Eldridge, who were husband and wife.   They held this land as tenants by entireties, seized *per tout et non per my.* *Jones* v. *Chandler,* 40 Ind. 588.

And neither party could, in any manner, dispose of the estate without the consent of the other.   *Davis* v. *Clark,* 26 Ind. 424; *Arnold* v. *Arnold,* 30 Ind. 305; *Simpson* v. *Pearson, Admr.,* 31 Ind. 1; *Carver* v. *Smith,* 90 Ind. 222.

Such lands are not subject to sale on execution against either party.   *Chandler* v. *Cheney,* 37 Ind. 391.

Even a mortgage solemnly executed by the husband on lands held by him and his wife as tenants by entireties is void.   *Chandler* v. *Cheney, supra; Hulett* v. *Inlow,* 57 Ind. 412.

Nor are they subject to a lien for taxes accruing upon other property of the owners.   *Morrison* v. *Seybold,* 92 Ind. 298.

A mortgage executed by both to secure the mortgage debt of one is invalid as to both.   *Crooks* v. *Kennett,* 111 Ind. 347; *McCormick* v. *Scovell,* 111 Ind. 551.

Without power to mortgage or in any manner bind the land for his individual debt, Allen M. Eldridge could not enter into any legal contract whereby he could change the lines of the farm, and surrender a part of the

estate.   Not being vested with this power, the agreement sought to be introduced in evidence was irrelevant and incompetent.

We are of the opinion that the court below did not err in its judgment, and it is affirmed.

